GUSTAVE SCHWITZER, PROSECUTOR, v. BOARD OF EDU-
CATION OF NEWARK AND FREDERICK KILGUS.

Argued November 8, 1909—Decided February 21, 1910.

1. Section 53 of the School law (*Pamph. L.* 1904, *Special Session*, *p.* 21) requires that all contracts for building school houses shall be awarded to the lowest responsible bidder.

2. Whether a party is a responsible bidder is for the determination of the body authorized to accept bids in the exercise of a *bona fide* discretion after investigation upon notice and hearing to the bidder affected.

3. The determination of the body authorized to accept bids, upon proper proceedings, that a bidder is not responsible is final and will not be disturbed by a reviewing court, unless it appears that the action was taken in bad faith or the proofs were of such a character as to satisfy reasonable men of the bidder's responsibility.

4. Specifications otherwise sufficient are not objectionable in requiring estimates from prospective bidders for municipal work on certain alternatives therein named.

5. Specifications for work and material called for by a municipality are sufficient if bidders are duly informed as to the nature, quality and quantity of the work and materials to be furnished, and the same information is furnished to all, so that there may be intelligent and competitive bidding and a binding contract may result therefrom.

6. A mere irregularity in a bid which does not injure or mislead will not justify its rejection by a municipal body charged with a duty of awarding a contract to the lowest responsible bidder when the bid appears to have been in substantial compliance with the specifications.

7. An award of a contract for the building of a school house made by the board of education of the city of Newark is not rendered unlawful by the fact that a committee of the board, duly authorized by the rules of the board, advertised for, received and opened the bids, it appearing that the committee, after opening the bids, made report to the board as a basis for its action.

8. Under section 33 of the Crimes act (*Pamph. L.* 1898, *p.* 804) an award of a contract will not be vitiated by the mere failure of the committee receiving the bids to publicly read certain "alternative estimates," where it appears that this course was pursued with the consent of the bidders, and where the bids themselves were publicly read and no fraud is charged or indicated.

9. The fact that "bulletins" in explanation of minor details of the drawings and specifications, and involving minor changes within the provisions of the specifications, were sent out by the municipal

board to bidders, will not invalidate the award of a contract to the successful bidder, when it appears that all such bulletins were received in advance of bidding by all prospective and actual bidders, and intelligent and competitive bidding was not impeded thereby.

10. Minor changes in the plans and specifications made by a board of education in charge of the award of a contract for a school building, after the approval of the plans and specifications by the state board of education, will not invalidate the award of a contract where it appears that such changes did not relate to or in anywise affect the heating, lighting, ventilating or other hygienic conditions of the school building or any other matters or things regulated by the School law. *Pamph. L.* 1904, *Special Session, p.* 5.

11. The award of a contract by the board of education of Newark will not be defeated by reason of the fact that the first of the five consecutive insertions of the call for bids in official newspapers required by chapter 168 of *Pamph. L.* 1899, *p.* 370, was inserted by the building committee the day before the board formally authorized such advertisement, it appearing that the rules of the board directed the committee to "advertise for bids for the required work as directed by law."

On *certiorari.*

Before Justices SWAYZE, TRENCHARD and PARKER.

For the prosecutor, *Franklin W. Fort* and *Malcolm MacLear.*

For the defendant the Board of Education of Newark, *Charles M. Myers.*

For the defendant Frederick Kilgus, *Conover English* and *Robert H. McCarter.*

The opinion of the court was delivered by

TRENCHARD, J. This writ brings up for review the award of a contract by the board of education of Newark to Frederick Kilgus for the erection of the East Side Commercial and Manual Training High School in the city of Newark.

The prosecutor claims to be aggrieved as a taxpayer.

The first ground upon which it is urged that this contract should be declared invalid is that the Sterling Engineering Company, and not the defendant Kilgus to whom the contract was awarded, was the lowest responsible bidder, and that the defendant the Board of Education did not give the Sterling company an opportunity to demonstrate to the board that it was a responsible bidder and that the proofs which the company did furnish should have satisfied the board.

We think there is no merit in the contention.

Section 53 of the School law (*Pamph. L.* 1904, *Special Session, p.* 21) requires that all contracts for building school houses shall be awarded to the lowest responsible bidder. This provision limits the power of the board. *Jacobson* v. *Board of Education of the City of Elizabeth,* 64 *Atl. Rep.* 609.

We think the board complied with this requirement.

There were seven bids. The two lowest, after the acceptance of the "desirable alternates" were the Sterling company, $211,134, and Frederick Kilgus, $245,845. The Sterling company was, therefore, the *lowest* bidder. But whether it was the lowest *responsible* bidder was for the determination of the board in the exercise of a *bona fide* discretion after investigation upon notice and hearing to the bidder affected. *Jacobson* v. *Board of Education of the City of Elizabeth, supra; Wilson* v. *Trenton,* 31 *Vroom* 394; *Connolly* v. *Freeholders,* 28 *Id.* 286. The proofs returned show that the board, after such investigation and hearing, accorded the Sterling company upon proper notice, found that the Sterling company was not responsible. Such action is final and will not be disturbed by this court unless it appears that it was taken in bad faith or the proofs were of such a character as to satisfy reasonable men of the company's responsibility. *Wilson* v. *Trenton, supra.* In this case fraud or bad faith is not claimed. With respect to the contention that the action was an abuse of discretion, it is sufficient to say that the proofs are such that we would not be justified in interfering with the finding of the board of education that

the company was not responsible. There being no question as to the responsibility of the defendant Kilgus it follows that he was the lowest responsible bidder.

The next objection is that the J. F. Walsh Construction Company submitted a lower bid than Kilgus, and that both bids exceeded the amount of the appropriation. This objection is not well founded in fact. The Walsh company's bid was $255,000, and that of Kilgus, considering the alternates submitted and accepted by the board, was $245,845. Such alternates as were submitted by the Walsh company did not reduce their bid. Since the amount of the appropriation was $250,000, the Kilgus bid was well within it. Specifications otherwise sufficient are not objectionable in requiring estimates on certain alternatives therein named. Every bidder in such case has the same opportunity to submit bids on the same alternatives. *Van Reipen* v. *Jersey City, 29 Vroom* 263.

It is further urged that the specifications were so indefinite that they did not protect the interest of the city.

We see no merit in the contention. No bidder seemed to have thought the specifications at all indefinite. Moreover our examination satisfies us that bidders were duly informed by the specifications as to the nature, quality and quantity of the materials to be furnished and the work to be done, and that the same information was furnished to all. This we think resulted in intelligent and competitive bidding and in a binding contract.

The next objection is that the penalty for overtime named in the Kilgus bid was not in compliance with the terms of the specifications.

The specifications prescribed the percentage basis upon which the penalty was to be calculated in the contract as ".04 per cent. per day on contracts above $100,000, provided that the maximum should be $100 per day." All of the proposals, the forms of which were furnished by the board to the bidders, fixed one-fourth per cent. as the amount of the penalty. That percentage was clearly an error, as the pen-

alty based thereon would have been in excess of the maximum fixed by the proposal itself. In making the contract the specifications were followed prescribing a penalty of $98.34 per day, which was, in fact, the percentage fixed by the specification on the contract price. Nobody was misled or injured. Such an irregularity in the bid would not justify its rejection by the board charged with the duty of awarding the contract to the lowest responsible bidder, the bid being in substantial compliance with the specifications. *Faist* v. *Hoboken*, 43 *Vroom* 361.

The next objection is that the committee on buildings, grounds and supplies had no authority to advertise for, receive and open bids. There is no merit in the objection. By the rules of the board such functions seem to have been delegated to that committee. We incline to think that the function was purely ministerial or administrative and could properly be delegated. *City of Burlington* v. *Dennison*, 13 *Vroom* 165. But whether so or not is immaterial for the committee, after opening the bids, reported to the board of education and the board acted on the bids and awarded the contract. Clearly the contract so awarded is not rendered unlawful by the fact that the appropriate committee advertised for, received and opened the proposals. *Kraft* v. *Board of Education*, 38 *Id.* 512.

It is next urged that the bids were not opened, read and recorded in the manner required by law. We think there was a substantial compliance with the statute. The argument is that section 33 of the Crimes act (*Pamph. L.* 1898, *p.* 804) was not followed with respect to the reading and recording of the bids. That section directs the committee, at the time and place designated in the notice, to immediately proceed to unseal and publicly announce the contents of the bids in the presence of such bidders as choose to attend, and to make proper record of the prices and terms in the minutes.

We cannot say that these directions were disregarded. At the designated time and place the committee received the bids and immediately opened them. Their contents was pub-

licly announced, the reading of the "alternative estimates" only being dispensed with and this apparently with the consent of the bidders. They were then referred to a subcommittee for tabulation and were subsequently recorded as tabulated. Since this was a substantial compliance with the statute, and no fraud is indicated or charged, the award of the contract is not thereby vitiated.

The next objection urged is that the specifications were changed after their adoption by the board and the advertisement for proposals thereon.

We think the objection is not well founded.

The specifications provided that should any bidder be in doubt as to the intention and meaning of the drawings or specifications, he might make inquiry in writing, and the question and answer, if reply be made, would be communicated to all bidders. Accordingly five "bulletins" were sent out to all who had applied to the board for proposal forms. Since all prospective bidders were required to use the board's proposal forms, all prospective and actual bidders necessarily received before bidding all bulletins and were therefore upon an equal footing, and there is no complaint in that regard. Moreover the bulletins were largely explanatory of minor details and those involving minor changes were within the provisions of the specifications to that effect.

It is again objected that changes were effected by these "bulletins" after the plans and specifications were adopted by the state board of education. Section 129 of the School act (*Pamph. L.* 1904, *Special Session, p.* 49) provides that "in order that due care may be exercised in the heating, lighting, ventilating and other hygienic conditions of public school buildings hereafter to be erected, all plans and specifications for any such proposed school building shall be submitted to the state board of education for suggestion and criticism before the same shall be accepted by the board of education of the district in which it is proposed to erect such building." Section 131 provides that in order that the health, sight and comfort of the pupils may be properly protected, all school

houses hereafter erected shall comply with certain conditions as to height of ceilings, floor space, &c., which are specifically set forth in that section. Accordingly, the plans and specifications in question were submitted to the state board and approved by it. The evidence shows that such minor changes as were made after such approval did not relate to heating, lighting, ventilating or other hygienic conditions, nor to any other matters regulated by the School law. The award of the contract, therefore, cannot be set aside because of such subsequent changes.

The next objection is that the call for bids was not advertised as required by law. We think it was. It is admitted that it was actually advertised for five consecutive insertions in the official newspapers of Newark as required by chapter 168 of *Pamph. L.* 1899, *p.* 370. This was done by the secretary of the board, under the direction of the committee on buildings, grounds and supplies. The argument is that since the first insertion was on August 27th, 1909, and the formal resolution of the board of education authorizing the committee to advertise was not passed until the day following, that, therefore, the contract finally awarded must be set aside. To this there are two sufficient answers—*first,* the rules of the board directed the committee to "advertise for bids for the required work as directed by law;" *secondly,* the action of the committee was ratified by the board.

We have examined all other reasons urged for setting aside the contract, but find no merit in them.

The result is that the proceedings brought up by this writ will be affirmed, with costs.