WILLIAM P. ADAMS ET AL., APPELLANTS, v. JOHN S. HORTON, CLERK OF THE CITY OF MILLVILLE; THE CITY OF MILLVILLE AND THE PEOPLE'S WATER COMPANY OF MILLVILLE, NEW JERSEY, RESPONDENTS.

Submitted December 5, 1921—Decided February 9, 1922.

On appeal from the Supreme Court, in which the following *per curiam* was filed :

"These cases were argued together, one being a *certiorari* to review a contract, and the other being a *certiorari* to review a bond issue of the city of Millville. It was conceded at the argument that the bond issue could not be sustained and upon motion of the solicitor of the city the proceedings involving that question were discontinued. The other question involved motions to dismiss, and the controversy is reduced to the question of the validity of proceedings and resolutions upon the part of the city of Millville to purchase the People's Water Company. That question in turn depends largely upon whether or not a certain ordinance known as ordinance 145, passed in 1916, was actually in existence and operative, and thus legally presented a foundation for the proceedings to purchase the water works. We think that this ordinance presented a basis for the municipal action taken. By section 1 it provides that it is hereby determined that the city of Millville shall acquire forthwith, for public use, the People's Water Company. By section 2, the mayor and members of the board of commissioners were constituted agents to negotiate on the part of the city an agreement for the purchase. Said agents were required to use all reasonable means to reach an agreement with all convenient speed and report the result within thirty days after the ordinance became effective or as soon thereafter as conveniently may be. Section 3 provides that if the city cannot acquire the property by agree-

ment, it shall proceed to condemn the same. It appears that the city endeavored to agree and apparently could not reach an agreement, and then finally in the summer of 1920, its officials received an offer from the People's Water Company, offering to sell the plant to the city for $125,000. The city thereupon passed a resolution accepting that proposition, contingent upon favorable action to that effect upon a referendum to the voters to be submitted in November, 1920.

"The resolution expressly provided that it should take effect only if and when such favorable action was taken by the people. In November, at the general election the matter was submitted to the people. They voted favorably, and we may fairly say in that situation that as against the prosecutor of this writ, the favorable vote of the people automatically resulted in a contract between the city and the People's Water Company.

"The prosecutor of this writ, who is a taxpayer, complains that before the contract could spring into existence there must have been as a condition precedent a meeting of the minds; and that there was no such meeting of the minds, as he contends, certain notices were not given to the People's Water Company by the city counsel to effectuate the result. It may be that the People's Water Company might so contend, and that the city might also assume that position, but as a fact neither of them occupies that mental status so that we may therefore assume that this contract sprang into existence early in November, 1920, as the result of the referendum. But we think the conclusive point which is dispositive of this contention, is that there was laches upon the part of the prosecutor in contesting the matter. It was open to him to apply for a writ in the summer of 1920 to review the validity of the resolution, which was a public proceeding of which he must have been cognizant. It was also open to him to apply for his writ upon the favorable action of the voters in November, 1920, and this he failed to do in either instance. He waited until December 30th, or 31st, and then obtained this writ with the result that an entire proceeding

of a public nature involving a large financial expenditure is delayed, not in its incipiency, but at a time when after labor and expense and a possible change of the legal rights of the parties, properties, and securities involved, and upon the threshold of its execution have created at least equities, which it is too late now to disturb in the public interest. In such a situation the law requires diligence and not inaction if a party seeks to challenge the legality of a proceeding involving a public interest. *McKevitt* v. *Hoboken,* 45 *N. J. L.* 482; *McGurty* v. *Newark,* 90 *Id.* 103; *Street Improvement Association* v. *Ocean City, Id.* 106; *Carver* v. *Camden,* 78 *Id.* 293; *Lindabury* v. *Clinton Township,* 93 *Id.* 96.

"This conclusion must result in a dismissal of the writ upon which argument was heard, with costs, and such will be the order."

For the appellants, *Lewis Starr.*

For the respondents, *Louis H. Miller, J. Fithian Tatem* and *John D. McMullin.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion of the Supreme Court.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, BLACK, KATZENBACH, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ.   11.

*For reversal*—None.