SOMERS CONSTRUCTION CO., Inc., a corporation of the Commonwealth of Pennsylvania authorized to do business in New Jersey, Plaintiff,

v.

BOARD OF EDUCATION FOR the SOUTHERN GLOUCESTER COUNTY REGIONAL HIGH SCHOOL DISTRICT and Albert E. Micklewright and Robert C. Micklewright, individually and in partnership, trading as Micklewright and Mountford, Defendants.

Civ. No. 639-60.

United States District Court
D. New Jersey.

Sept. 25, 1961.

John R. Bennie, Camden, N. J., for plaintiff.

Joseph Mennite, Woodbury, N. J., for defendant Bd. of Education.

Kisselman, Devine, Deighan & Montano, by Peter J. Devine, Jr., Camden, N. J., for defendants Micklewright and Mountford.

MADDEN, Chief Judge.

Before the Court at this time are separate motions by the defendant, Board of Education for the Southern Gloucester County Regional High School District (hereinafter referred to as "the School Board" or "the Board of Education") and the defendants, Albert E. Micklewright and Robert C. Micklewright, individually and in partnership, trading as Micklewright and Mountford (hereinafter collectively referred to as "the architects") to dismiss the present action against them basically upon the ground that the plaintiff has failed to state a claim upon which relief can be granted against either of them under Rules 12(b) (6) and 56

734

of the Federal Rules of Civil Procedure, 28 U.S.C.A. Since jurisdiction of the action is based upon diversity of citizenship the substantive law of the State of New Jersey will control. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

This suit is the result of an unsuccessful effort by the plaintiff, Somers Construction Co., Inc. (hereinafter referred to as "Somers") to be the recipients of a contract for the construction of a new high school in the Southern Gloucester County Regional High School District. Few, if any, of the essential facts alleged by the plaintiff and giving rise to its alleged cause of action are in dispute.

The School Board advertised for bids on the construction of a new high school in their district. All of the bids, including the plaintiff's, were received on or before August 11, 1959. Three days later the Board met to consider the bids submitted to them. Each bid consisted of a base price along with a separate price for each of twenty-five (25) different "alternates" (such as aluminum doors, storm windows, terraza bathroom floors, etc.), any or all of which alternates the School Board reserved the right to accept or reject at its option.

The bids submitted were tabulated by the architects and on the basis of this tabulation a contract for the erection of the school building was awarded to George H. Evans & Company as low bidder for the base bid and the alternates selected. On August 16, the architects, pursuant to their authorization from the School Board, issued a letter of notice to proceed to George H. Evans & Company and work on the school was immediately commenced.

On or about August 26, 1959, the plaintiff Somers advised the defendant-architects that there was an error in the Board's tabulations and that based upon the alternates selected the plaintiff was in fact the low bidder. On the following evening the Board of Education met and, by a resolution, purported to rescind the award of the contract to George H. Evans & Company. They then recon-

sidered the alternates which had been bid upon and selected all of the alternates which had previously been selected *with the exception of alternate No. 14 which was for exterior aluminum doors and frames*. George H. Evans & Company had bid the sum of $2,272 for the alternate No. 14 and the plaintiff Somers had bid the sum of $750. The effect of this new selection of alternates, calculated or otherwise, was to make George H. Evans & Company in fact low bidder.

Thereafter, its protests to the Board going unheeded, the plaintiff Somers instituted an action in lieu of a prerogative writ in the Superior Court of New Jersey to test the validity of the contract awarded to Evans Construction Company. After a motion for a preliminary injunction was denied by that Court but before a final hearing was had and a decision on the merits rendered, the plaintiff voluntarily withdrew its action and suit was instituted in this Court on July 20, 1960.

The Evans Construction Company has since completed construction of the school. The difficult problem which remains for this Court is to determine whether the defendants have by their alleged actions breached some legal duty owed to the plaintiff, which breach could justify a money judgment in the latter's favor.

The complaint, in addition to the above facts, alleges malice on the part of both the Board of Education and the architects in depriving the plaintiff of the contract. It is broken into four separate counts. The first two counts are against the School Board and the last two are against the architects. Inasmuch as the principles of law applicable in the disposition of the defendants' motions will differ, each count will be treated separately. It hardly need be said that at this stage of the litigation the Court is not concerned with the ability of the plaintiff to sustain its allegations by proof. The sole question, as to each count, is whether the allegations therein entitle the plaintiff to the opportunity at a trial to make good its claim that the defendants have violated some legal duty owing to it. Continental Collieries v. Shober, 3 Cir., 1942,

130 F.2d 631. For the sake of clarity we will discuss the counts against each defendant in reverse order.

### The Second Count Against the Board of Education

The second count of the complaint alleges that the "Defendant Board of Education by its servants, agents and/or employees * * * negligently, carelessly and recklessly tabulated the bids submitted and failed to exercise that care, caution, duty and circumspect required under the circumstances * * * as a result of which the plaintiff was caused to suffer the loss of the contract and has sustained loss of profits and [other expenses] * * *."

■ This language (unlike that of the first count which is discussed *infra*) unmistakably sounds in tort. However, it is elementary that recovery in tort must be predicated upon the breach of some legal duty which the defendant itself, or through its agent, owes to the plaintiff. What is the precise duty which, in support of its claim, Somers alleges was owed to it by the School Board?

The answer would appear to be either (a) the duty of a board of education itself, or through its agents, to use due care in tabulating the bids prior to a final contract selection, or, (b) the duty of a board of education to use due care in the ultimate award of the contract itself.

■ If it is the former duty which the plaintiff would rely upon for recovery in tort, its complaint must fail for several reasons. First, the Court knows of no common law principle which would impose upon a municipal body such as a board of education, *vis-à-vis* a particular bidder, the duty to use reasonable care in tabulating a bid and which would subject it to civil liability for its failure to do so. If a duty of this nature exists it would be owed not to a particular bidder but rather to the general public whose interest the board is bound by law to serve when making such awards. Malan Construction Corporation v. Board of County Road Commissioners, D.C.E.D. Mich.1960, 187 F.Supp. 937.

■ Moreover, from the standpoint of causation there is an intervening governmental act of a non-ministerial nature between the act of tabulating the bids and the resulting loss of the contract complained of here. If the ultimate award is no longer open to attack any earlier act by the Board in the chain of causation cannot itself support a cause of action against them for loss of the bid. A contrary conclusion would be quite anomalous. It would allow a party to do indirectly what it cannot do directly and would thus circumvent those substantial safeguards heretofore accorded governmental awards.

■ Nor can it be denied that a board of education acts with *discretion* in selecting a bid. This is true despite the command of N.J.S.A. 18:11–10 which specifically requires a board to award the contract to "the lowest responsible bidder." It has never been supposed that as a result of this statute a board of education performs a purely ministerial act when awarding a construction contract. Not only must the board pass upon the "responsibility" of particular bidders but it must select those alternates which in its judgment are best designed to meet its needs; and what is equally important, it must determine whether to select a particular bid or reject all bids and begin anew. For these reasons the conclusion seems inescapable that any negligent act leading up to the award of a public contract, such as a mistake in arithmetic, the careless loss or misplacement of a bid, an error in reading bid figures, etc., cannot alone form the basis for recovery in tort against a municipal school board *if the final award itself is legally unassailable*. Stated another way, the acts leading up to the board's selection of a particular bid merge in the final act of selecting a bid and unless the law affords some legal ground for attacking the ultimate award itself, none can be heard to complain.

736

■■■ This, of course, leads us to the question of whether the Board has in fact breached a duty of the second type, i. e., a duty under the alleged facts to award the contract to the plaintiff? Again we think the plaintiff has failed in law to establish by its allegations a specific duty upon the Board to award the contract to them. Any contention to this effect would obviously rest heavily upon the command of N.J.S.A. 18:11–10 (quoted supra). Indeed, the whole complaint is predicated upon the allegation that the plaintiff was in fact *low bidder* and absent the command of such a statute the plaintiff's second claim for relief would be unworthy of serious consideration.

Did this statute somehow impose a duty upon the Southern Gloucester County Board of Education to award the contract to the plaintiff under penalty of civil liability for its failure to do so? The Court is of the opinion that it did not. Although it is true that the law in certain instances recognizes civil liability for the violation of a standard of conduct established by statute or ordinance, it is a basic rule that the plaintiff, in order to recover, be within that class of persons whom that statute was intended to protect and that the particular harm which occurred be of that type against which the statute was intended to protect. Evers v. Davis, 1914, 86 N.J.L. 196, 90 A. 677. Since neither of these conditions can be met by the plaintiff here, the plaintiff has failed to establish a necessary element of his tort claim (i. e., a primary duty owed to this plaintiff by the Board). Thus, even assuming the award was illegal, the plaintiff has no recourse in tort.

■ The New Jersey statute which imposes a duty upon a school board to award building contracts to the lowest responsible bidder was intended to benefit the public as an entity by securing to them the prudent expenditure of taxpayers' funds. Shore Gas & Oil Co. v. Spring Lake Borough, 1953, 27 N.J. Super. 33, 98 A.2d 689. Rather than vest a cause of action in a disappointed low bidder, it gives to the public in a taxpayers' suit the right to demand that only the lowest responsible bidder be given the contract. The legislative history of the statute, its subsequent judicial history, the title and nature of the general Act within which it is contained, and the language of the statute all point to this conclusion. In re Ewert's Will, 1961, 65 N.J.Super. 100, 167 A.2d 175. Not a single court of this or any other state having a similar statute has allowed money damages to a private bidder for a board's negligent or intentional failure to comply with such a law. See Joseph Rugo, Inc. v. Henson, D.C.D.Conn. 1960, 190 F.Supp. 281.

It is true that in New Jersey this statute has been held to furnish a basis for a private contractor's action *in lieu of prerogative writ* to enjoin the construction of a school under a contract given to a non-low bidder. Murdock Contracting Co., Inc. v. Borough of Verona, 1957, 47 N.J.Super. 102, 135 A.2d 352; Sellitto v. Cedar Grove Township, 1945, 133 N.J.L. 41, 42 A.2d 383. Such cases constitute, at most, a limited exception to the above rule or perhaps, more properly, are altogether outside the scope of the rule which deals with ordinary common law tort actions. See Joseph Rugo, Inc. v. Henson, supra. They are, however, completely consistent with that rule to the extent that such suits, unlike the ordinary tort action, are *directly* calculated to benefit the party primarily intended to be benefited by the statute, i. e., the general public, and only benefit the private contractor *incidentally* to the extent that his interest coincides with that of the general public. To allow a contractor who did submit the low bid to recover money damages against a board of education under such a statute would simply aggravate the injury to the general public and such an interpretation of N.J.S.A. 18:11–10 would be contrary to both the letter and the spirit of that statute. See, for example, Petrozello v. Davis, 1952, 19 N.J.Super. 537, 88 A.2d 672.

■ Furthermore, even if this Court were in doubt as to whether a New Jer-

sey court would summarily reject such a theory of tort liability, there would be no doubt that the State Court would not allow a contractor who is aware of an allegedly improper award to voluntarily and intentionally delay in seeking a determination as to the validity of such an award and only after construction is completed seek money damages from the municipal agency. Yet such are the undisputed facts here. Somers had commenced an action *in lieu of prerogative writ* in the Superior Court of New Jersey to test the validity of the contract awarded to Evans Construction Company. After its motion for a preliminary injunction was denied but before a final hearing and opinion on the *merits* was reached, it chose to voluntarily withdraw its complaint. The law of New Jersey is quite clear in requiring a party to exercise diligence and not inaction when seeking to challenge the legality of a proceeding involving a public interest. Failure to do so constitutes laches. Summer Cottagers' Ass'n of Cape May v. City of Cape May, 1955, 19 N.J. 493, 117 A. 2d 585; Adams v. Horton, 1922, 97 N. J.L. 312, 116 A. 426; Ringwood Co. v. West Milford, 1912, 82 N.J.L. 741, 82 A. 867; Carver v. City of Camden, 1909, 78 N.J.L. 293, 73 A. 47; Bullwinkel v. City of East Orange, 1926, 4 N.J.Misc. 593, 133 A. 774. On the strength of these cases (which involved simple delay of a short duration) we must conclude as a matter of law that the ultimate award is not now open to the plaintiff's attack and its second count must, therefore, be dismissed.

### The First Count Against the Board of Education

The first count of the complaint is less easily characterized. The plaintiff here charges the Board of Education was acting in an arbitrary, capricious and malicious manner with the intent to deprive the plaintiff of its "vested interest" in the construction contract. At this particular juncture of the case, when the Court must deny summary judgment unless all of the possible legal avenues of recovery are clearly foreclosed, the lack of a clear legal theory easily characterized complicates rather than facilitates our task. Nevertheless, after careful study of the matter, the Court is convinced that under the law of New Jersey the alleged facts in this count also fail to state *any* claim upon which relief can be granted.

The first count may broadly be interpreted as one sounded in tort or contract. First, viewing it as sounding in contract, we are met at the outset with such basic questions as whether or not a contract was ever entered into between the plaintiff and the Board of Education (i. e., did the Board accept the plaintiff's offer?); if so, when and for what terms?

In its brief the plaintiff argues that it acquired a "vested interest" in the contract *at the moment the bids were opened.* Presumably such an interest is contractual in nature, though apparently dependent in part upon the command of N.J.S.A. 18:11–10 which (as earlier mentioned) imposes an absolute duty upon a board of education when awarding a contract to make the same "to the lowest responsible bidder."

Such a "vested interest" argument, although it may find some support in the broad language of such cases as Murdock Contracting Co., Inc. v. Borough of Verona, supra; Rose, Inc., v. Board of Education of East Orange, 1956, 39 N.J. Super. 565, 121 A.2d 549; and Evers v. Davis, supra, was specifically rejected by the New Jersey Superior Court in a case closely paralleling the case at bar, to wit: Farrell v. Board of Education, 1931, 10 N.J.Misc. 88, 157 A. 656. In that case it is true the board of education went no further than to select and by resolution adopt a particular set of alternates. It failed to take the further step of awarding the contract, as the defendant-Board of Education *purported* to do here. However, when it is conceded (as the plaintiff here must) that the August 14th resolution mistakenly awarding the contract to the Evans Construction Company was *ultra vires,* being clearly inconsistent with the command of N.J.S.A. 18:11–10,

supra, this failure does not appear significant. We know of no rule of law or logic which would dictate a conclusion that the defendant-Board of Education by merely performing an *ultra vires* act either restricted itself to the acceptance of the first set of alternates or created some "vested interest" in the plaintiff, and both conclusions were rejected in the Farrell case, supra. Since the Board never performed any of the formal acts essential to an acceptance of the plaintiff's bid but instead chose a new set of alternates thereby rejecting the former selection of alternates as it was free to do, Farrell v. Board of Education, supra, and since under such new alternates the plaintiff was admittedly no longer low bidder, any claim based upon a purported contract (executed or executory) between the plaintiff and the defendant must necessarily fail.

■ Several other reasons necessitate the same conclusion. The law of New Jersey requires a local school board to pass upon the "responsibility" of any successful bidder before he can be awarded a contract. Schwitzer v. Board of Education, 1910, 79 N.J.L. 342, 75 A. 447. For this Court to recognize the possibility of a money judgment being rendered against the School Board on the present set of facts it would have to ultimately assume such "responsibility" or expressly find it—neither of which are we authorized by New Jersey law to do.

■ Moreover, there are such cases as Sellitto v. Cedar Grove Twp., 1944, 132 N.J.L. 29, 38 A.2d 185; Armitage v. City of Newark, 1914, 86 N.J.L. 5, 90 A. 1035; Shore Gas & Oil Co. v. Spring Lake Borough, supra; and Petrozello v. Davis, supra, which have consistently recognized the right of a board of education to reject *all* bids submitted to it, even after the bids have been opened. Were the Court to accept the plaintiff's "vested interest" argument it must implicitly reject all of these cases since such a holding would have to rest upon the conclusion that a board of education is bound to an acceptance of the low bid at the moment all of the bids are opened.

Aside from the fact that such a conclusion renders the board of education a mere rubber stamp, it completely ignores other formalities of acceptance of public contracts well recognized in New Jersey law. For a Federal Court to set a precedent which would so clearly do violence to a well established policy of the State in the operation of its governmental bodies would be quite improper. All of these reasons compel the conclusion that the plaintiff is without a remedy in contract.

■ Viewing the first count as one sounding in tort we reach the same conclusion. Our observations as to the second count bear repeating here. The plaintiff has again failed to establish an element essential to any claim in tort— a primary legal duty flowing from the defendant to the plaintiff. The only new allegation which merits consideration is plaintiff's claim that in reconsidering the alternates and selecting new ones the Board acted "arbitrarily, capriciously and with malicious intent to deprive the plaintiff * * * of its vested interest in the contract." Does this allegation of *malice* on the part of the School Board save the plaintiff's claim from summary judgment. The Court does not think so.

As we have already pointed out, the time for an attack upon the ultimate award of the construction contract has, under New Jersey law, long since lapsed. Sellitto v. Cedar Grove Twp., supra; Armitage v. City of Newark, supra; Shore Gas & Oil Co. v. Spring Lake Borough, supra; Petrozello v. Davis, supra. This being true, the *motive* for making that award can be of no legal consequence, at least as to the School Board itself. To hold otherwise would be quite illogical (allowing the plaintiff to do indirectly what it cannot do directly) and could seriously impair the orderly operation of governmental bodies of this nature.

Moreover, it is doubtful that a governmental body such as a board of education can entertain a malicious intent. (38 Am.Jur., Mun.Corp., p. 619.) It may be that the individual members of that body are guilty of malice and could in certain

limited instances be *personally* liable for a malicious act done under color of their office. However, it is the Board of Education for the Southern Gloucester County Regional High School District which is defending here, not the individual members of that Board. The first count will accordingly be dismissed.

### The Fourth Count of the Complaint

The fourth count of plaintiff's complaint, which is directed against the Board's architects, individually and in their partnership capacity, attempts to set forth a claim for relief based upon a theory of tortious interference with a prospective economic advantage. Assuming, that had the defendant-architects properly totaled the bids submitted to the Board of Education, the plaintiff would have in due course been awarded the contract, does this entitle the plaintiff to relief against them upon such a theory of law?

The Court feels the answer must clearly be in the negative. Such a tort, in order to be actionable, must be the product of a *malicious* act. Newark Hardware & Plumbing Supply Co. v. Stove Mfrs. Corp., 1947, 136 N.J.L. 401, 56 A.2d 605; Brennan v. United Hatters, 1906, 73 N.J.L. 729, 65 A. 165, 9 L.R.A.,N.S., 254; Rainier's Dairies v. Raritan Valley Farms, Inc., 1955, 19 N.J. 552, 117 A.2d 889; Joseph v. Passaic Hosp. Ass'n, 1958, 26 N.J. 557, 141 A.2d 18; Hohl v. Mettler, 1960, 62 N.J.Super. 62, 162 A.2d 128; Gherardi v. Trenton Board of Education, 1958, 53 N.J.Super. 349, 147 A.2d 535; see, also, Prosser, Torts § 107 (2nd Ed.) (1958). A Federal Court sitting in a diversity action is certainly not free to pioneer in such an area of well established State law. For this reason the fourth count of the complaint, which fails to allege malice, must be dismissed.

### The Third Count of the Complaint

Unlike the fourth count, however, the third count does contain a claim of *malice* on the part of the architects in advising the Board of Education to deprive the plaintiff of the construction contract. The Court agrees with the defendant-architects that the question in this count is not whether the plaintiff has alleged the elements essential to such a claim for relief, but rather, whether one of the essential elements of such a claim —the claim of *malice* on the part of the architects (see discussion supra, at page 737)—has been effectively negated by the answer and supporting affidavits of the defendants which categorically deny such malice. In other words, where the defendants' answer contains a denial of the general allegation of malice, along with affidavits in support of such a denial, must the plaintiff thereafter come forward with counter-affidavits alleging specific facts in support of such malice or suffer summary judgment thereby?

Preliminary to answering this question, it should be noted that the issue of whether or not a Federal Court should grant summary judgment is basically a question of Federal law. In a diversity action it is admittedly State law which defines the cause of action. Nevertheless, the effect of affidavits upon a well pleaded claim for relief, whether or not the non-moving party must come forward with counter-affidavits or suffer summary judgment and related questions are *procedural in nature* and, therefore, must be resolved by the law of the forum. For this reason we feel that the defendants' reliance upon New Jersey case law on this point is somewhat misplaced. Rather, we think such cases as Subin v. Goldsmith, 2 Cir., 1955, 224 F.2d 753; Sarnoff v. Ciaglia, 3 Cir., 1947, 165 F.2d 167; Williams v. Minnesota Mining & Mfg. Co., D.C.S.D.Cal.1953, 14 F.R.D. 1; Robinson v. Waterman Steamship Co., D.C.D.N.J.1948, 8 F.R.D. 155; and particularly the *rationale* set forth in Barron & Holtzoff, Federal Practice and Procedure, § 1232.2 (1958 Ed.) must control here. When the fact sought to be established by an affidavit in support of a motion for summary judgment involves the state of mind or motive of a person (or body of individuals), as is the case in the third count of the present complaint, summary judgment is particularly inappropriate and must be denied.

It might be added, however, that the plaintiff has a difficult case to prove, as is pointed up by the excellent development of New Jersey case law on this type of action in the defendant-architects' brief. Nevertheless, the fact that the plaintiff has chosen a long and arduous road to recovery does not justify our blocking that road at this point.

We, therefore, will deny the motion for summary judgment as to the third count, while granting the same as to the first, second and fourth counts of the complaint.

Counsel will prepare an appropriate order.