NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3265-15T1

NAN JIN SUH KIM, SUK CHANG SUH,
and SC & NJ SUH REALTY LIMITED
LIABILITY COMPANY,

 Plaintiffs-Appellants,

v.

REDSTONE TREMATORE WESTAMPTON,
LLC, BRIAN TREMATORE,
TREMATORE WESTAMPTON, LLC,
MARQUIS REALTY MANAGEMENT,
LLC, MARQUIS REALTY HOLDING
COMPANY, LLC, REDSTONE RIDGE,
LLC, and CHRISTOPHER SMARGISSO,

 Defendants-Respondents.

______________________________________

 Argued October 31, 2017 – Decided November 27, 2017

 Before Judges Carroll and Mawla.

 On appeal from Superior Court of New Jersey,
 Law Division, Bergen County, Docket No. L-
 1181-15.

 Stacey E. Boretz argued the cause for
 appellants (Lindabury, McCormick, Estabrook &
 Cooper, PC, attorneys; Peter M. Burke, on the
 brief).
 Josiah Contarino argued the cause for
 respondents Redstone Ridge, LLC and
 Christopher Smargisso (Archer & Greiner, PC,
 attorneys; Michael S. Horn, of counsel and on
 the brief; Mr. Contarino, on the brief).

 Mara P. Codey argued the cause for respondents
 Brian Trematore, Trematore Westampton, LLC,
 Marquis Realty Management, LLC, and Marquis
 Realty Holding Company, LLC (Mandelbaum
 Salsburg, PC, attorneys; Ms. Codey, on the
 brief).

PER CURIAM

 Plaintiffs appeal from two June 12, 2015 orders dismissing

their complaint for failure to state a claim. For the reasons

that follow, we affirm.

 I.

 The following facts are taken from the record. On May 22,

2012, plaintiffs Nan Jin Suh Kim and Suk Chang Suh entered into a

purchase and sale agreement (PSA) with defendant Redstone

Trematore Westampton, LLC (Redstone) to acquire a commercial

property located in Westampton.

 On July 18, 2012, the parties executed an amendment permitting

Kim and Suh to assign the PSA to their company, Suh Realty, the

ultimate purchaser. On September 28, 2012, Suh Realty purchased

the property. The purchase was subject to a written lease

agreement between Redstone and TLE Westampton, LLC dated June 15,

2010.

 2 A-3265-15T1
 On September 28, 2012, in conjunction with the closing of Suh

Realty's purchase of the property, Redstone, as assignor, and Suh

Realty, as assignee, executed an assignment and assumption of

lease agreement (assignment).

 The lease provided for Redstone to pay ComRealty, LLC, the

broker who produced the lease, a total commission of $100,000 with

"fifty percent [] payable upon the issuance of the CO [certificate

of occupancy] and fifty percent [] upon the twelfth [] month of

the Lease Term." Accordingly, the first payment was due in March

2012, and the second payment was due in March 2013.

 Section 14.1(b) of the lease did not require payment of the

second half of the commission until March 2013. However, section

14.1(c) of the lease accelerated the second payment: "In the event

the Leased Premises are conveyed to a third party, any unpaid

portions of the Commission shall be due and payable on the closing

date of the conveyance." The lease also provided:

 In the event of any sale of the Leased Premises
 by Landlord, Landlord shall be entirely freed
 and relieved of all liability under all of its
 covenants and obligations contained in or
 derived from this Lease arising out of any
 act, occurrence or omission, occurring after
 the consummation of such sale; and the
 purchaser at such sale or any subsequent sale
 of the Leased Premises shall be deemed,
 without any further agreement between the
 parties or their successors in interest or
 between the parties and such purchaser, to
 have assumed and agreed to carry out any and

 3 A-3265-15T1
 all of the covenants and obligations of
 Landlord under this Lease.

 The Assignment provided:

 C. The Agreement requires Assignor to assign
 to Assignee all of Assignor's right, title and
 interest in the Lease and requires Assignee
 to assume Assignor's obligations under the
 Lease.

 2. Assignor agrees that it shall be
 responsible for the discharge or
 performance of any duties or obligations
 to be performed or discharged by Assignor
 as Landlord under the Lease prior to the
 date hereof, but Assignor shall not be
 responsible for the discharge or
 performance of the duties or obligations
 to be performed or discharged by Assignor
 as Landlord under the Lease after the
 date hereof.

 3. Assignee hereby assumes and agrees to
 perform all of the terms, covenants and
 conditions of the Lease on the part of
 Assignor required to be performed by
 Landlord thereunder, from and after the
 date hereof (but not those arising or
 required to be performed prior thereto).

On September 28, 2012, the parties closed on the property.

Pursuant to the lease, ComRealty, LLC's second commission payment

became due on that date.

 Suh Realty failed to pay the $50,000 commission, alleging it

was Redstone's obligation to make the payment at closing. On

February 21, 2013, ComRealty sent notice to Suh Realty demanding

payment.

 4 A-3265-15T1
 Plaintiffs filed a complaint in the Law Division alleging

breach of contract, asserting it was Redstone's obligation to make

the commission payment. The complaint further asserted fraudulent

transfer and veil piercing claims, and sought to impose liability

against defendants Brian Trematore and Christopher Smargisso on

these grounds. Defendants filed motions to dismiss for failure

to state a claim. The motion judge granted defendants' motions

to dismiss and determined the plain language of the lease and

assignment obligated plaintiffs to pay the commission. This appeal

followed.

 II.

 We recite our standard of review. "On appeal, we engage in

a de novo review from a trial court's decision to grant or deny a

motion to dismiss filed pursuant to Rule 4:6-2(e)." Smith v.

Datla, 451 N.J. Super. 82, 88 (App. Div. 2017) (citing Rezem Family

Assoc., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App.

Div. 2011)). When a court grants a party's motion to dismiss for

failure to state a claim "[w]e approach our review of the judgment

below mindful of the test for determining the adequacy of a

pleading: whether a cause of action is 'suggested' by the facts."

Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746

(1989) (citing Valentzas v. Colgate-Palmolive Co., 109 N.J. 189,

192 (1988)). "In reviewing a complaint dismissed under Rule 4:6-

 5 A-3265-15T1
2(e) our inquiry is limited to examining the legal sufficiency of

the facts alleged on the face of the complaint." Ibid. (citation

omitted). "However, a reviewing court 'searches the complaint in

depth and with liberality to ascertain whether the fundament of a

cause of action may be gleaned even from an obscure statement of

claim, opportunity being given to amend if necessary.'" Ibid.

 "[T]he Court is not concerned with the ability of plaintiffs

to prove the allegation contained in the complaint." Ibid. (citing

Somers Constr. Co. v. Bd. of Educ., 198 F. Supp. 732, 734 (D.N.J.

1961)). "For purposes of analysis plaintiffs are entitled to

every reasonable inference of fact." Ibid. (citing Indep. Dairy

Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89 (1956)).

"The examination of a complaint's allegations of fact required by

the aforestated principles should be one that is at once

painstaking and undertaken with a generous and hospitable

approach." Ibid.

 III.

 Plaintiffs contend defendants "had a clearly defined

obligation to pay the $50,000 commission to ComRealty." They

argue pursuant to section 14.1(c) of the lease, the second

commission installment became "due and payable on the closing date

of the conveyance." We disagree.

 6 A-3265-15T1
 "A contract is an agreement resulting in obligation

enforceable at law. . . . To be enforceable as a contractual

undertaking, an agreement must be sufficiently definite in its

terms that the performance to be rendered by each party can be

ascertained with reasonable certainty." W. Caldwell v. Caldwell,

26 N.J. 9, 24-25 (1958) (citing Friedman v. Tappan Dev. Corp., 22

N.J. 523, 531 (1956)). "The polestar of contract construction is

to discover the intention of the parties as revealed by the

language used by them." Karl's Sales & Serv. v. Gimbel Bros., 249

N.J. Super. 487, 492 (1991).

 "Generally, the terms of an agreement are to be given their

plain and ordinary meaning." M.J. Paquet v. N.J. DOT, 171 N.J.

378, 396 (2002). "[W]here the terms of a contract are clear and

unambiguous there is no room for interpretation or construction

and the courts must enforce those terms as written." Karl's Sales,

249 N.J. Super. at 493 (citing Kampf v. Franklin Life Ins. Co.,

33 N.J. 36, 43 (1960)); see Cty. of Morris v. Fauver, 153 N.J. 80,

103 (1998) (citation omitted).

 The courts may not "remake a better contract for the parties

than they themselves have seen fit to enter into, or to alter it

for the benefit of one party and the detriment of the other."

Ibid. (citing James v. Fed. Ins. Co., 5 N.J. 21, 24 (1950)). "A

court has no power to rewrite the contract of the parties by

 7 A-3265-15T1
substituting a new or different provision from what is clearly

expressed in the instrument." E. Brunswick Sewerage Auth. v. E.

Mill Assocs., Inc., 365 N.J. Super. 120, 125 (App. Div. 2004)

(citations omitted).

 Here, the assignment stated:

 Assignee hereby assumes and agrees to perform
 all of the terms, covenants and conditions of
 the Lease on the part of Assignor required to
 be performed by Landlord thereunder, from and
 after the date hereof (but not those arising
 or required to be performed prior thereto).

The motion judge concluded:

 The Assignment is dated September 28, 2012,
 the same date the second commission payment
 became due to ComRealty under the Lease.
 Accordingly, as the second commission payment
 was due on the date of the closing – which was
 the day Suh Realty assumed its obligations
 under the Lease – and not prior to that date,
 it is undisputed that the obligation to pay
 the second installment for the commission was
 none other than Suh Realty's. Contrary to
 Plaintiff's argument that Defendants' focus
 [is] on the wrong assignment provision – and
 should focus on paragraph 2 – the two
 paragraphs are not mutually exclusive.
 Paragraph 2 specifies the assignor would not
 be responsible for the duties or
 responsibilities under the Lease after
 September 28, 2012. Paragraph 3 further
 narrows the scope of the assignor's
 obligations by placing those obligations upon
 the assignee for the date of the transaction.
 Accordingly, Suh Realty's complaint is
 dismissed pursuant to [Rule] 4:6-2(e), as it
 has failed to plead a cause of action upon
 which relief may be granted.

 8 A-3265-15T1
 Our de novo review leads us to the same conclusion as the

motion judge. Plaintiffs' complaint could only proceed if

defendants were responsible for payment of the $50,000 commission.

The plain language of the contract indicates plaintiffs were

responsible for payment of the commission. Therefore, the motion

judge properly dismissed plaintiffs' complaint for failure to

state a claim.

 IV.

 Plaintiffs contend "Redstone was just one entity among many

that Smargisso and Trematore intentionally set up to shield

themselves and hide their assets." Therefore, plaintiffs assert

the motion judge should not have barred them from asserting their

fraudulent conveyance and veil piercing claims by dismissing the

complaint.

 Because the plain language of the lease and assignment

demonstrate Suh Realty was obligated to pay the second $50,000

commission payment, we do not reach the fraudulent conveyance and

veil piercing arguments. These arguments, along with the argument

the motion judge erred by dismissing their claim for punitive

damages, lack sufficient merit to warrant further discussion in a

written opinion. R. 2:11-3(e)(1)(E).

 Affirmed.

 9 A-3265-15T1