261 S.E.2d 66 (1979)
Charles E. THOMAS, Pres., etc., et al.
v.
The BOARD OF EDUCATION, COUNTY OF McDOWELL, etc., et al.
No. 14484.
Supreme Court of Appeals of West Virginia.
December 11, 1979.
*67 Philip A. LaCaria, Tutwiler, Crockett & LaCaria, Welch, for appellants.
Wade T. Watson, Welch, for appellees.
Truby, St. Supt. Schools by William A. Toussaint, Charleston, for amicus curiae.
McGRAW, Justice:
This appeal by the McDowell County Non-Teaching Employees Association, Charles E. Thomas, President, from the Circuit Court of McDowell County challenges a ruling that the members of the Association were not entitled to payment of an additional $55.00 each per month from special levy funds over and above the minimum salaries and wages provided for such employees under W.Va.Code § 18A-4-8. We reverse the ruling of the circuit court.
On December 4, 1973, the voters of McDowell County, at a special levy election, authorized the adoption of a special school levy to go into effect on July 1, 1974. The relevant provisions of that levy proposal are as follows:
A. To continue the supplement to the state basic salary of each teacher, principal and supervisor in McDowell County in the amount of one hundred five dollars ($105.00) per month plus the required social security payments, being an approximate amount of $735,000 per year, or an approximate total for five years of $3,675,000.
B. To continue the supplement to the salary or wages of each regularly employed full-time non-teaching employee in the amount of fifty-five dollars ($55.00) per month plus the required social security payments, being an approximate amount of $170,000 per year, or an approximate total for five years of $850,000.
By amendment to W.Va.Code § 18A-4-8, effective July 1, 1973, a minimum pay scale was established for auxiliary and service employees of the school system. The state minimum salary was set at $335.00 per month. Beginning July 1, 1974, the McDowell County Board of Education paid its *68 non-teaching employees the state minimum salary for auxiliary and service personnel plus an additional $55.00 per month and the required social security payment, the latter two payments coming from the funds authorized by the adoption of the special school levy. These payments continued until July 1, 1975. On that date Senate Bill No. 121, amending Code § 18A-4-8, became effective.
The effect of Senate Bill No. 121 was to establish a pay scale similar to that already in effect for teachers, based on an individual employee's job classification and length of employment, these factors determining the state minimum salary of the individual employee.[1] For example, pursuant to this scale, a person in his or her first year of employment at the lowest pay grade received a state minimum monthly salary of $350.00. Individuals employed for a longer period of time or in a job with a higher pay grade received higher state minimum monthly salaries. By amendment, the Legislature has subsequently increased the state minimum salary schedule.
On July 1, 1975, appellees apparently ceased paying non-teaching employees the levy supplement over and above the state minimum monthly salary and began applying the special levy funds to bring the employee salaries up to the new state minimum amounts, although no such action was implemented with respect to teaching employees. Appellants challenged this use of the levy funds, contending that they were entitled to be paid the state minimum monthly salary with an additional $55.00 under the provisions of the special levy from July 1, 1975 to July 1, 1979.[2] Appellants exhausted all of their administrative remedies before bringing a declaratory *69 judgment action in the Circuit Court of McDowell County, which denied relief.
We are asked to decide whether appellees were required under the terms of the special levy, to spend the levy funds as supplemental payments in addition to the non-teaching employees' state minimum salary. We conclude that they were.
The first issue raised is: to what purpose were the levy funds dedicated? Appellants contend that the wording of the levy proposal with respect to non-teaching employees is essentially identical to that of the proposal dealing with teaching employees and clearly contemplates the payment of a supplement in the form of a "bonus" of $55.00 per month and social security payments over and above the salary or wages of the individual employee. They maintain that the reference in the levy proposal to "salary or wages" is actually a reference to the state minimum monthly salary, which was established for non-teaching employees on July 1, 1973. Appellants contend that when the Legislature established graded minimum pay schedules for non-teaching employees and raised the state minimum monthly salary, the levy funds were intended to be used to continue that supplement in addition to the increased state minimum salary.
Appellees, on the other hand, maintain that the distinction between the wording of the levy proposal with respect to teachers and non-teaching employees clearly shows that the purpose of the levy with respect to non-teaching employees was to grant a supplement to the salary of the individual employee as it stood on July 1, 1974, the effective date of the levy. If the purpose of the levy had been to grant a bonus over and above the state minimum salary, they argue, the levy proposal dealing with non-teaching employees would have been worded similarly to the proposal regarding teachers and would have specifically referred to the state minimum or basic salary. Since this was not the case, appellees maintain that they are only required to use the levy funds to pay the supplement over and above the July 1, 1974 salaries of the non-teaching employees and need not pay an additional $55.00 over the increased state minimum salary since established by the Legislature.
We do not see merit in this argument, for if the levy notice in fact referred to the salary of non-teaching employees at the effective date of the levy, it must also have referred to the state basic salary of teachers, principals and supervisors on that day. The minimum salaries of teachers were fixed by statute at that time, as were those of non-teaching employees. And yet appellees have continued to pay the teachers a supplement of $105.00 per month over and above the salary fixed by statute even when those minimum salaries have been increased by the Legislature. This disparity belies the validity of appellees' reasoning. We will, however, consider the merits of appellees' argument.
The general rule is that the purpose for which funds were raised at a special election levy is determined by the proposal approved by the voters at the polls. Haws v. County Court, 86 W.Va. 650, 104 S.E. 119 (1920); Lawson v. Kanawha County Court, 80 W.Va. 612, 92 S.E. 786 (1917); Harner v. Monongalia County Court, 80 W.Va. 626, 92 S.E. 781 (1917); Brown v. Preston County Court, 78 W.Va. 644, 90 S.E. 166 (1916).[3] The true interpretation of the language of a special levy proposal, then, is the meaning given to it by the voters of the county who, by their approval of the special levy, consent to be taxed more heavily to provide the necessary funds. We must be guided by the purpose the voters of McDowell County sought to effect in approving the special *70 levy rather than by the intention of those who interpreted the proposal.
We think that the voters here expressed their desire that all employees of their county school system should receive something in addition to the state mandated monthly salaries. In reading paragraphs A and B of the proposal, we think the voters were given reason to believe that they were agreeing to an excess tax which would provide a bonus to all school employees of their county every month for the next five years, and that the supplement would continue even if the state salaries were increased. Technicalities aside, the only substantive difference we see in the two paragraphs are that teachers and supervisory personnel are to be paid a larger monthly supplement of $105.00, while the supplement of non-teaching employees is to be the lesser sum of $55.00 per month. We believe the distinction made by appellees between the language of the two proposals represents the highest form of legal technicality and is a perfect example of exalting form over substance.[4] We do not believe that public policy should rely on such obscure, formal interpretations of language.
As the purpose of the levy which the voters approved at the polls was to provide a supplement to the state minimum salary, there is no question that the levy funds were required to be spent for that purpose. Funds derived from a special levy may be expended only for the purpose for which they are approved. W.Va.Code § 11-8-25. Any expenditure of levy funds in an unauthorized manner or for an unauthorized purpose constitutes an unlawful diversion of funds. W.Va.Code § 11-8-26; Jarrell v. Board of Education, 131 W.Va. 702, 50 S.E.2d 442 (1948). Appellees had no discretion in the expenditure of the levy funds and were required to pay the monthly supplements to the appellants in accordance with the wishes of the people of McDowell County.
Appellees argue, however, that they are bound by the formula devised by the State Department of Education and the State Board of School Finance to implement the minimum salary provisions of Senate Bill No. 121. Appellees maintain that these bodies were limited in their efforts by the Legislature's failure to appropriate sufficient money to fund the entire amount of the basic minimum salary. In establishing the formula for the implementation of Senate Bill No. 121, therefore, the State Department of Education and the State Board of School Finance interpreted the act and concluded that county special levy funds could be used in computing the county's local share of financing its salaries. While the State Department of Education and the State Board of School Finance were not made parties to this action, we believe it is necessary to discuss the merits of this issue, as raised by appellees, in order to give a clear understanding of our holding today.
By analogy, we find chapter 18, art. 9A of the W.Va.Code instructive. It provides a plan of financial support for the public schools of the state and statutorily fixes the share of the county and the state in contributing to that plan. There the basic determined by aggregating the costs of the county for a number of expenses, including the salaries of teachers and other personnel.[5]
Under W.Va.Code § 18-9A-11, the computation of the local share in the state aid formula is based on regular county levies for general current expense purposes, the amount of which is fixed statutorily by W.Va.Code § 18-9A-2(a) for each of the different classes of property. Through complex calculations a figure is arrived at comprising the local share of the particular county. The total amount of state aid to the county is the difference between the cost of the county's basic foundation program *71 and the amount of the county's local share. W.Va.Code § 18-9A-12. Nowhere in that state aid formula are special levies included in the computation of the local share. That state aid formula merely provides for subtracting from the cost of the basic foundation program ". . . [the] amounts raised by the county from the regular local property levy . . .", (emphasis added) as determined by the State Tax Commissioner's appraisement. Pauley v. Kelly, W.Va., 255 S.E.2d 859 at 879 (1979).
Appellees here rely on the following provision of W.Va.Code § 18A-4-8, as amended: "In establishing such local salary schedules [in excess of the state minimum salary], no county, from the effective date of this article, shall reduce local funds allocated for auxiliary and service personnel salaries used for supplementing federal and state funds provided for such salaries." Their interpretation of this provision, and that of the court below, is that the county cannot transfer to the state responsibility for salaries which it had voluntarily assumed prior to the passage of the statute, and that this section empowers the State Department of Education and the State Board of School Financing to include special levy funds in their computation of the local share. While we have held that the construction of a statute by the government officers charged with its execution is entitled to great weight, it is also true that their construction may be disregarded when clearly erroneous. Evans v. Hutchinson, W.Va., 214 S.E.2d 453 (1975). We think that is the case here.
We have recently held that school personnel laws are to be strictly construed in favor of personnel. Syl. pt. 1, Morgan v. Pizzino, W.Va., 256 S.E.2d 592 (1979). A strict construction of the language of this statute in favor of the non-teaching personnel leads to the conclusion that the provision is intended to ensure that local funds allocated for salary supplements in excess of the state minimum salaries will continue to be used for that purpose and will not be diminished or diverted, in whole or in part, to other uses merely because the Legislature increases the amount of the state minimum salary to equal or to surpass the amount being paid by the county school board.
This interpretation of the statute is strengthened by the fact that W.Va.Code § 18A-4-5, dealing with the establishment of teacher salaries in excess of the state minimum, contains language[6] almost identical to the provision cited by appellees. Section 18A-4-5 clearly contemplates that special levy funds approved to supplement teacher salaries shall not be expended in the manner employed by appellees and the State with regard to non-teaching employees. The Legislature has elsewhere clearly indicated that special levy funds must be expended for the purpose approved by the voters. W.Va.Code §§ 11-8-25, 11-8-26. We think that the overall intent of the Legislature in this regard is to preserve the integrity of special or excess levy funds. This intent may not be defeated by a contrary construction of one provision of a statute without regard to the general purpose of the Legislature with respect to special levies.
For these reasons, we conclude that W.Va. Code § 18A-4-8 does not contemplate the inclusion of special or excess levy monies in the computation of the local share of financing school personnel salaries, and that the contrary interpretation forwarded by appellees is clearly erroneous. The special levy fund is separate and distinct from the funds out of which state minimum salaries are paid and its integrity is protected by statute.
While we need not reach the issue here, we reiterate that our holding in Pauley v. Kelly, supra, defined the State's constitutional responsibility for providing a "thorough and efficient" system of schools. In light of Pauley, we question whether the State can constitutionally foist upon those *72 counties with special excess levies its duty to finance the school system.
It is our opinion, therefore, that when the funds raised by a special levy election are intended to provide supplements to the state minimum salaries and wages of non-teaching school employees, such funds may be expended by the county board of education for that purpose only.
Appellants also present an argument that the different treatment given teaching and non-teaching employees violates equal protection. We find appellants' argument here rather nebulous, but in view of our holding above, we need not reach the issue.
For the reasons above stated, we reverse the judgment of the Circuit Court of McDowell County and remand the case for further proceedings in accordance with and consistent with this opinion.
NOTES
[1] STATE MINIMUM PAY SCALE
 YEARS OF EMPLOYMENT
PAY GRADE 0 1 2 3 4 5 6 7 8 9 10
A. Monthly _________ 350 360 370 380 390 400 410 420 430 440 450
B. Monthly _________ 370 380 390 400 410 420 430 440 450 460 470
C. Monthly _________ 410 420 430 440 450 460 470 480 490 500 510
D. Monthly _________ 460 470 480 490 500 510 520 530 540 550 560
E. Monthly _________ 510 520 530 540 550 560 570 580 590 600 610
F. Monthly _________ 570 580 590 600 610 620 630 640 650 660 670
G. Monthly _________ 600 610 620 630 640 650 660 670 680 690 700
H. Monthly _________ 670 680 690 700 710 720 730 740 750 760 770
CLASS TITLE PAY GRADE
Aide I A
Aide II B
Custodian I A
Custodian II B
Custodian III C
Custodian IV D
Carpenter I E
Carpenter II F
Electrician I F
Electrician II G
Foreman G
General Maintenance C
Groundsman B
Handyman B
Lubrication Man C
Machinist F
Mechanic F
Mechanic Assistant E
Office Equipment Repairman I F
Office Equipment Repairman II G
Painter E
Plumber I E
Plumber II G
Supervisor of Maintenance H
Truck Driver D
Watchman B
Clerk I B
Clerk II C
Secretary I D
Secretary II E
Secretary III F
Cafeteria Manager D
Cook I A
Cook II B
Cook III C
Food Services Supervisor E
Bus Operator D
School Bus Supervisor E

[2] Appellants do not contest the use of levy funds between July 1, 1974 and July 1, 1975, the first year the special levy was in effect.
[3] These cases all stand for the proposition that funds set aside by the voters of a political or taxing unit of the State must be used for the purpose and in the manner prescribed by the proposal which the voters approved at the election. We note that these cases all involve levies or bond proposals for construction or improvement of schools or roads and we are aware that in such cases it is much easier to determine that funds are being expended for purposes other than those approved by the voters. However, that factor in no way affects the application of the rule of law to the case at bar.
[4] In fact, the State Superintendent of Schools, in his amicus curiae brief, concedes that the difference in the wording of the two proposals may be due simply to the fact that the language used was identical to that of the previous additional tax levy, approved when there was no state minimum wage or salary for non-teaching employees.
[5] W.Va.Code §§ 18-9A-3 through 10.
[6] "Provided, that in establishing such local salary schedules, no county, from the effective date of this act . . . shall reduce local funds allocated for instructional salaries and used in supplementing the state mandated salaries as provided for in this article . . .."