357 S.E.2d 246

**Wanda MAYNARD, Individually and as President of the Wayne County School Service Personnel Association, an Unincorporated Association, Who Sues on Behalf of Herself and all Members of Said Association, Past and Present, and Nola Adkins and Juttie Smith, Individually and as Employees and School Service Personnel of the Board of Education of the County of Wayne, and on Behalf of all Other Employees and School Service Personnel, Past and Present, Their Heirs, Personal Representatives and Successors, Who are Similarly Situate and Have Like Interests in the Wayne County Schools**

v.

**The BOARD OF EDUCATION OF the COUNTY OF WAYNE, a Statutory Corporation, Shearl Plymale, President, Tommy Hill, Paul E. Hutchison, Argie Moore and Sandra Pinson, Being Duly Elected or Appointed Members of Said Board**

No. CC963.

Supreme Court of Appeals
of West Virginia.

May 1, 1987.

Rehearing Denied June 3, 1987.

James H. Coleman, Charleston, Robert C. Chambers, Chambers, Chambers & Heilmann, Huntington, for appellants.

John H. Bicknell, Greene, Ketchum, Bailey & Tweel, Huntington, for appellees.

McHUGH, Justice:

This case is before this Court upon certified questions from the Circuit Court of Wayne County, West Virginia, pursuant to the provisions of *W.Va.R.App.P.* 13 and *W.Va.Code,* 58–5–2 [1967]. The case involves a special levy in effect several years ago for increasing the salaries of nonteaching employees of a county board of education. We believe that the trial court reached the correct answers to the two certified questions but failed to address a

vital issue related to the second certified question, specifically, the issue of laches.

I

On January 22, 1974, the voters of Wayne County, West Virginia authorized a special levy providing for, *inter alia*, increased salaries of school service personnel (nonteaching employees) by $118,188.00 annually over the next five fiscal years, commencing with the fiscal year beginning July 1, 1974. At the time the special levy was authorized, the Wayne County school service personnel were receiving the minimum wage provided for such employees under existing federal and state laws.[1]

By amendments to *W.Va.Code*, 18A–4–8, effective July 1, 1974 and July 1, 1975, respectively,[2] the legislature increased the minimum pay scales for all school service personnel in the State's public schools to various levels above the minimum salary level for such personnel in effect prior to approval of the special levy by the voters of Wayne County. In April, 1975, the Superintendent of Schools for Wayne County, West Virginia, requested, pursuant to *W.Va.Code*, 18–3–6 [1931], an interpretation of the meaning of these amendments to *W.Va.Code*, 18A–4–8, in light of the special levy in Wayne County in January, 1974, to increase the salaries of school service personnel.[3]

In response to this request the State Superintendent of Schools, by a memorandum dated April 25, 1975, made the "suggestion" that the special levy funds were to be used to *meet* the amended state minimum pay scales, rather than to *supplement* such minimum pay. In other words, the *State* Board of Education would *reduce* the *state* aid share by the amount of the special levy funds. Two examples were given: "If a persons' [sic] present salary, *including* the local supplement from [the] *special levy*, amounts to more than the state minimum requirement in S.B. 121 [the Senate Bill in 1975 amending *W.Va.Code*, 18A–4–8], that salary may not be reduced and *need not be increased*." (emphasis added) "If the persons' [sic] present salary, *including* the local supplement from [the] *special levy*, does not reach the minimum required by S.B. 121, the salary must be increased *only to reach* that in S.B. 121." (emphasis added)

The Wayne County Board of Education followed the "suggestions" of the State Superintendent of Schools and applied the special levy funds to meet but not to supplement the amended minimum pay scales for school service personnel.

On April 23, 1984, the plaintiffs, school service personnel in Wayne County, West Virginia, brought the underlying declaratory judgment action in the Circuit Court of Wayne County, West Virginia ("the trial court"), to construe the written employment contracts and to recover funds, totalling $590,940, plus accrued interest, that the plaintiffs allege are due them as salary supplements over and above the 1974 and 1975 amended minimum pay scales for such personnel. The fiscal years involved in the action commence with the fiscal year beginning July 1 of 1974 and end with the fiscal year beginning July 1 of 1978. The defendants named in the action are the Wayne County Board of Education and its members.

---

1. The public schools of this State, including the salaries of school service personnel (nonteaching employees), are financed by a statutory plan comprised of four components: (1) an amount raised from local levies on real and personal property; (2) the State "foundation" aid, which is money the State pays out of general revenue funds to the counties based upon a formula consisting of seven components; (3) State supplemental benefits; and (4) amounts raised locally by special levies by vote of the people in the county. *Pauley v. Kelly*, 162 W.Va. 672, 708–09, 255 S.E.2d 859, 878–79 (1979); *W.Va.Code*, 18–9A–1 to 18–9A–22, as amended.

2. See 1974 *W.Va.Acts*, 2d Extra.Sess., ch. 17, and 1975 *W.Va.Acts*, ch. 203. *W.Va.Code*, 18A–4–8 has been amended several times after the 1974 and 1975 amendments to the same, but these later amendments are not relevant in this case.

3. *W.Va.Code*, 18–3–6 [1931] provides: "At the request in writing of any citizen, teacher, school official, county or state officer, the state superintendent of schools shall give his interpretation of the meaning of any part of the school law or of the rules of the state board of education."

The defendants filed a motion to dismiss, asserting the affirmative defense of the statute of limitations, on the ground that the two-year statute of limitations contained in *W.Va.Code*, 55–2–12, as amended, barred the plaintiffs' action.[4] The trial court, treating the motion as one for summary judgment, denied the motion, ruling that the ratification of the special levy had created a written contract between the Wayne County Board of Education and the citizens of Wayne County, including the plaintiffs, which was governed by the ten-year statute of limitations for written contracts contained in *W.Va.Code*, 55–2–6, as amended.[5]

Thereafter, the defendants filed an answer denying liability and filed a third-party complaint against the West Virginia State Board of Education and various other state officials. The essence of the third-party complaint was that the salaries of the plaintiffs had been reduced by the State Board of Education and the other state officials, not by the Wayne County Board of Education, and, therefore, should the Wayne County Board of Education be found liable to the plaintiffs, it was entitled to be reimbursed by the third-party defendants.

The third-party defendants subsequently moved to dismiss the third-party complaint on the ground that the trial court lacked jurisdiction and venue over them. The trial court granted this motion on the ground that the third-party complaint was barred by the constitutional immunity afforded the State by *W.Va. Const.* art. VI, § 35 and on the ground that the claim against the third-party defendants had been improperly brought in a county other than Kanawha County, West Virginia, in violation of *W.Va.Code*, 14–2–2, as amended.[6]

The defendants then moved for summary judgment against the plaintiffs on the ground that the Wayne County Board of Education possessed the same immunity as the third-party defendants when acting pursuant to the "directives" and "instructions" of the State Superintendent of Schools and the State Board of Education. The trial court denied this motion of the defendants and certified the following two questions to this Court, answering the first question in the negative and the second question in the affirmative:

(1) Is a county board of education immune from contractual liability to its employees for unpaid salaries when it follows the directives and instructions of the State Superintendent of Schools and the State Board of Education?

(2) Does the ten-year statute of limitations for written contracts apply to an action to enforce the payment of salary supplements to county nonteaching employees, when the salary supplements are pursuant to a county special levy?

## II

With respect to the first certified question, the defendants argue that a county board of education is covered by the constitutional immunity of the State when the county board follows the directives of the State Superintendent of Schools. The defendants contend that *Sayre v. Stevens Excavating Co.,* 163 W.Va. 324, 256 S.E.2d

---

**4.** *W.Va.Code,* 55–2–12 [1959] provides, in pertinent part: "Every personal action for which no limitation is otherwise prescribed shall be brought: ... (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; ..."

**5.** *W.Va.Code,* 55–2–6 [1931] provides, in pertinent part:

Every action to recover money, which is founded upon ... any contract ... shall be brought within the following number of years next after the right to bring the same shall have accrued, that is to say: ... if it be ... upon a contract in writing, signed by the party to be charged thereby, or by his agent, but not under seal, within ten years; ...

We express no opinion on the validity of the trial court's rationale that the ratification of the special levy had created a written contract.

**6.** The issue of whether the State Board of Education and the other state officials are immunized from liability for the unpaid salaries by virtue of *W.Va. Const.* art. VI, § 35 is not before us in this case. A county board of education is not entitled to the immunity of the State under *W.Va. Const.* art. VI, § 35 and is not entitled to common law governmental immunity. Syl., *Ohio Valley Contractors v. Board of Education,* 170 W.Va. 240, 293 S.E.2d 437 (1982).

571 (1979), and *Bailey v. S.J. Groves & Sons Co.*, 159 W.Va. 864, 230 S.E.2d 267 (1976), are analogous and support their position. In those two cases this Court held that a private contractor which follows the plans, designs or specifications of the West Virginia Department of Highways in constructing a public improvement is entitled to the State's immunity from tort liability for damages to private property, unless the private contractor independently commits a tort.

We believe these two precedents do not support the defendants' position. Other precedents of this Court, involving the same issue involved herein, specifically, the liability of a county board of education for unpaid salary supplements to nonteaching employees, funded by a special levy, indicate that the county board's failure to apply the special levy funds to supplement the minimum salaries constitutes an independent wrong for which the county board is liable. *See Thomas v. Board of Education*, 164 W.Va. 84, 261 S.E.2d 66 (1979) [hereinafter *Thomas I*]; *Thomas v. Board of Education*, 167 W.Va. 911, 280 S.E.2d 816 (1981) [hereinafter *Thomas II*], *overruled on another point, Hansbarger v. Cook*, 177 W.Va. 152, 157 n. 5, 351 S.E.2d 65, 71 n. 5 (1986).

In *Thomas I* this Court noted that the county board of education felt bound by the interpretation of the State Board of Education. The latter had interpreted the amendments to *W.Va.Code*, 18A–4–8 and had concluded that county special levy funds were to be used in computing the county's local share of financing salaries of nonteaching employees. The Court concluded, however, that this interpretation clearly conflicted with the unambiguous provisions of *W.Va.Code*, 18–9A–11, as amended, which utilizes only property tax-es generated by *regular* levies in calculating the county's local share of public school financing. The Court decided that the county board of education had no discretion in the expenditure of the special levy funds but was responsible for expending such funds for the purpose approved by the voters of the county, specifically, to supplement, not to meet, the increased state minimum salaries of nonteaching employees.

In *Thomas II* the Court, in rejecting the county board of education's claim of state governmental immunity under *W.Va. Const.* art. VI, § 35, recognized that such immunity does not apply to acts of public officials which are beyond the scope of their office and which are, therefore, void. As a particular example of this principle we held in syllabus point 1 of *Thomas II:*

> When a levy election is held to raise money for a specific public purpose, the money must be applied toward that purpose. W.Va.Code § 11–8–25. If the individual or agency charged with the expenditure of such funds fails to properly apply the money, legal action is in order to insure the proper application of the money.

We decided again, as in *Thomas I*, that the county board of education in that case had failed to meet the mandate of the levy election. The same is true here.

■ We therefore hold that a county board of education is not immune from contractual liability to its employees for unpaid salaries because it followed the directives of the State Superintendent of Schools.[7]

## III

The second certified question asks us which statute of limitations is applicable to the underlying declaratory judgment ac-

---

7. When a county commission or other fiscal body is in doubt about whether it is appropriate to expend a substantial amount of public funds for an extraordinary matter, it should bring a legal proceeding to bring the question before a neutral arbiter, rather than seeking and relying upon the advice of an assistant prosecuting attorney, whose salary is paid by the county commission. *Powers v. Goodwin*, 170 W.Va. 151, 160, 291 S.E.2d 466, 475 (1982). Similarly, the county board of education in this extraordinary case involving a substantial sum of public funds should, perhaps, have timely brought a mandamus proceeding or a declaratory judgment action against the State Board of Education to obtain a more objective ruling on whether the State Board of Education was entitled to reduce the state aid share of financing of nonteaching employees' salaries by the amount of the special levy funds.

tion. The defendants assert that the two-year statute of limitations, *W.Va.Code*, 55–2–12(b) [1959], quoted *supra* n. 4, is applicable and bars the relief sought nearly five years after the last fiscal year in question and nearly nine years after the first fiscal year in question.[8] The trial court agreed with the plaintiffs that the ten-year statute of limitations for written contracts, *W.Va. Code*, 55–2–6 [1931], quoted *supra* n. 5, is applicable. We agree with the trial court that the ten-year statute of limitations, not the two-year statute of limitations, would apply here.

"In order for the ten year statute of limitations to be applicable, there must be a contract in writing and the obligation or liability must grow immediately out of the written instrument and not remotely." Syl. (in part), *Sansom v. Sansom*, 148 W.Va. 603, 137 S.E.2d 1 (1964). The liability arises immediately out of the written contract here. At all times relevant herein, a county board of education was required to execute a written contract of employment of service personnel. The contract could be in letter form and had to state the classification and terms of work, the employment period *and pay* and had to be signed as accepted by the employee. *W.Va.Code*, 18A–2–5 [1969].[9]

Compensation of an employee is an integral part of every employment contract. Therefore, statutory provisions on employee compensation, such as minimum pay requirements and salary supplement requirements, are integral elements of a contract of employment. Here, *W.Va.Code*, 18A–2–5 [1969] necessarily incorporated related statutes. For example, *W.Va.Code*, 18A–4–8 [1974, 1975] sets forth the minimum pay for service personnel of county boards of education. Also, *W.Va.Code*, 11–8–17 [1967] provides for special levies for, *inter alia*, salary supplements for public school personnel.

The sixth numbered paragraph of the service personnel employment contract set forth in the current version of *W.Va.Code*, 18A–2–5 expressly recognizes this principle of incorporation of statutory law into the employment contract: "This contract shall at all times be subject to any and all existing laws, or such laws as may hereafter be lawfully enacted, *and such laws shall be a part of this contract*." (emphasis added) Accordingly, *W.Va.Code*, 18A–4–8 [1974, 1975], on minimum pay for service personnel, and *W.Va.Code*, 11–8–17 [1967], on special levies, were as much a part of the plaintiffs' written employment contracts as if they had been written therein.

However, it is the written employment contract, not the incorporated statutory law *per se*, which fixes the liability of a public employer to its public employees for the purpose of determining the applicable statute of limitations in a judicial action or proceeding for noncompliance with such contract and statutory duties incorporated therein. The coercive relief sought in the declaratory judgment action here is damages from the plaintiffs' employer for breach of the employment contracts.

In *Julesburg School District No. RE–1 v. Ebke*, 193 Colo. 40, 562 P.2d 419 (1977), several teachers brought what the trial court determined to be a mandamus proceeding to compel a school board to put into effect a preexisting statutory salary schedule and to pay portions of salaries not previously paid. There was a thirty-day statute of limitations for a mandamus proceeding to enforce statutory duties. The trial court granted the school board's motion for summary judgment based upon the running of this thirty-day statute of limitations. On appeal the intermediate court of

---

8. "[W]hen money recovery is sought on an obligation payable in installments, the statute of limitations commences to run against each installment from the time it becomes due." *G.T. Fogle & Co. v. King*, 132 W.Va. 224, 236, 51 S.E.2d 776, 784 (1948).

9. The current version of *W.Va.Code*, 18A–2–5, amended in 1983, provides the exclusive, detailed form for service personnel employment contracts, in lieu of the letter form permitted by the 1969 version of this statute.

We note that the employment contract for service personnel is a contract of adhesion, with all terms dictated and leaving no room for bargaining for other terms.

appeals reversed, holding that an action for breach of contract was involved and was not time-barred. The Supreme Court of Colorado affirmed the court of appeals' ruling. It held that the statutory salary schedule was part of the contract between the school board and the teachers and that the breach of contract action was not barred by the statute of limitations.

In *Hunt v. City of Ashland*, 274 Ky. 567, 119 S.W.2d 640 (1938), a paving contractor sought to recover from a city the amount by which certain assessments made for street improvements exceeded more than one-half of the value of the lots against which the assessments were made, pursuant to a statute expressly providing for the city, not the abutting lot owner, to be liable for such excess. The city's written contract with the paving contractor contained a provision exempting the city from liability for the excess assessments. The court held that this contractual provision was void as contrary to the statute and that the statute was as much a part of the contract as if it had been written therein. Nonetheless, the court held that it was the contract, and not the statute, which fixed the city's liability to the paving contractor. Therefore, the suit was on a written contract and was governed by a fifteen-year statute of limitations. It was not a suit on a "liability created by statute" and it was not a suit to recover for "injury to the rights of the plaintiff," either of which would have been governed by a five-year statute of limitations. The suit was held not to be time-barred. In so holding the court made this observation which is equally pertinent here:

It is argued that the effect of concluding that the action is on a contract rather than for a liability created by statute is to hold the city liable on an implied agreement in the face of the authorities deciding that a municipal corporation can be held responsible only upon its express contract. We do no violence to that rule here. The city has made an express contract pursuant to the statute, and its terms are governed by the provisions of the act. Its promise to pay was as broad as the statute, and the invalid exceptions from liability must be ignored.

274 Ky. at 570, 119 S.W.2d at 642.

■ The declaratory judgment action here for breach of the written employment contracts was not barred by the applicable ten-year statute of limitations.

## IV

An issue related to the certified question on the statute of limitations is whether there has been laches in this case, barring all or part of the relief sought.

Stated succinctly, " '[l]aches is delay which operates prejudicially to another person's rights. *Carter v. Carter*, 107 W.Va. 394, 148 S.E. 378 [1929].' Syl. pt. 1, *Bank of Marlinton v. McLaughlin*, 121 W.Va. 41, 1 S.E.2d 251 (1939)." *Brand v. Lowther*, 168 W.Va. 726, 737, 285 S.E.2d 474, 482 (1981). The equitable doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights. *Black's Law Dictionary* 787 (5th ed. 1979). Contrasted with the defense at law of the running of the statute of limitations, the controlling element of the equitable defense of laches is prejudice, rather than the amount of time which has elapsed without asserting a known right or claim. "Delay alone does not constitute laches; it is delay which places another at a disadvantage." Syl. pt. 3, *Carter v. Carter*, 107 W.Va. 394, 148 S.E. 378 (1929). This Court has consistently emphasized the necessity of a showing that there has been a detrimental change of position in order to prove laches:

Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, change of title or condition of the subject-matter, intervention of equities, or other causes. When a court of

equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.

Syl. pt. 3, *Carter v. Price*, 85 W.Va. 744, 102 S.E. 685 (1920). *Accord*, syl. pt. 2, *Hartley v. Ungvari*, 173 W.Va. 583, 318 S.E.2d 634 (1984); syl. pt. 5, *Laurie v. Thomas*, 170 W.Va. 276, 294 S.E.2d 78 (1982); syl. pt. 2, *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980).

The substantive distinctions between statutes of limitations and laches are still viable under the *West Virginia Rules of Civil Procedure,* despite the procedural merger thereunder of legal and equitable proceedings:

> The fact that Rule 2 of our Rules of Civil Procedure states that 'all procedural distinctions between actions, suits and other judicial proceedings at law or in equity and in the forms of action are abolished' does not mean the distinction[s] between our various statutes of limitations and the equitable doctrine of laches are also abolished.

Syl. pt. 2, *Laurie v. Thomas*, 170 W.Va. 276, 294 S.E.2d 78 (1982). One of the substantive distinctions between statutes of limitations and laches is that "[l]aches applies to equitable demands[,] where the statute of limitation does not." Syl. pt. 2 (in part), *Condry v. Pope*, 152 W.Va. 714, 166 S.E.2d 167 (1969). The reverse is also true, that is, statutes of limitations, not laches, apply to demands at law: "The mere delay in asserting a right [at law], short of the limitation fixed by statute, does not bar the right in equity." *Id.* Stated another way, " '[i]f a legal right gets into equity [that is, into a proceeding in which equitable relief, primarily, is sought], the statute [of limitations] governs [the determination of whether the legal right is time-barred].' " *Condry v. Pope,* 152 W.Va. 714, 722, 166 S.E.2d 167, 172 (1969), *quoting Waldron v. Harvey*, 54 W.Va. 608, 617, 46 S.E. 603, 607 (1904). Again, "[i]f the action was formerly cognizable at law[,] statute of limitations is the appropriate defense; if formerly cognizable in equity, laches applies." M. Lugar and L. Silverstein, *West Virginia Rules of Civil Procedure* 81 (1960).

With respect to claims for equitable relief, a court of equity will normally invoke the maxim of equity which states that "equity follows the law" and will generally look first to what the statute of limitations would be for any analogous right or remedy at law. However, a court of equity, in examining the delay in asserting a claim for equitable relief, is not bound by any analogous statute of limitations. In a given case involving equitable relief which is alleged to be barred by laches, the analogy of the statute of limitations may be applied; or a longer period than that prescribed by the statute may be required; or a shorter time may be sufficient to bar the claim for equitable relief. *Ruckman v. Cox,* 63 W.Va. 74, 78, 59 S.E. 760, 761 (1907).

■ Under ordinary circumstances a suit in equity will not be barred by laches before the time fixed by an analogous statute of limitations. On the other hand, if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit in equity after a shorter period than that fixed by an analogous statute of limitations, the court will sustain the defense of laches. 2 J. Pomeroy, *A Treatise on Equity Jurisprudence* §§ 419a., 419b., 419d. (5th ed. 1941). *See also Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743, 747 (1946) (a suit in equity may fail due to laches, though not barred by the statute of limitations). *See generally* 27 Am.Jur.2d *Equity* § 160 (1966) (laches as affected by statutory period of limitation); 30A C.J.S. *Equity* § 131 at 96–98 (1965) (delay short of statutory period).

" 'Since proceedings for declaratory relief have much in common with equitable proceedings, the equitable doctrine of laches has been applied in such proceedings.' " *Taylor v. City of Raleigh,* 290 N.C. 608, 622, 227 S.E.2d 576, 584 (1976), *quoting* 22 Am.Jur.2d *Declaratory Judgments* § 78 (1965). *See also* E. Borchard, *Declaratory Judgments* 238, 240, 348 (2d ed. 1941) (declaratory judgment actions are largely equitable in nature). On the other hand, a party may obtain coercive relief, including

damages, as well as declaratory relief, in a declaratory judgment action. Syl. pt. 1, *Torbett v. Wheeling Dollar Savings & Trust Co.,* 173 W.Va. 210, 314 S.E.2d 166 (1983); *W.Va.R.Civ.P.* 57; *W.Va.Code,* 55–13–1 [1941].

We are aware that at least one other jurisdiction has held that the fact that both equitable relief (a declaratory judgment construing a contract) and legal relief (a money judgment based on breach of contract) are requested in the same action does not render all issues and relief sought equitable in nature for the purpose of applying the equitable defense of laches to the legal relief sought. That is, laches is not available as a defense to an action at law even though the action at law is combined with the cumulative remedy of declaratory relief. *Abbott v. City of Los Angeles,* 50 Cal.2d 438, 462, 326 P.2d 484, 498 (1958) (en banc). While we believe that this principle is generally valid, it should not be applied under the particular circumstances of this case. " '[W]hat constitutes laches depends upon the facts and the circumstances of each particular case.' " Syl. pt. 5 (in part), *White v. Manchin,* 173 W.Va. 526, 318 S.E.2d 470 (1984) (prior citation omitted). *Accord, Hartley v. Ungvari,* 173 W.Va. 583, 587, 318 S.E.2d 634, 638 (1984).

■ A party must exercise diligence when seeking to challenge the legality of a matter involving a public interest, such as the manner of expenditure of public funds. Failure to do so constitutes laches. *Somers Construction Co. v. Board of Education,* 198 F.Supp. 732, 737 (D.N.J.1961). Laches may apply in the context of public employment. For example, the doctrine of laches is available to a public employer against whom a declaratory judgment action for reinstatement is brought by a discharged public employee. *Fruhling v. County of Champaign,* 95 Ill.App.3d 409, 416, 51 Ill.Dec. 508, 512, 420 N.E.2d 1066, 1070 (1981).[10]

Generally, courts have been reluctant to award retroactive monetary relief to public employees who have filed actions after a lengthy delay, where to afford such relief would cause substantial prejudice to the public's fiscal affairs. In *Osborne v. Stone,* 472 So.2d 223 (La.Ct.App.), *vacated and remanded on procedural grounds,* 476 So.2d 809 (La.1985), for example, the court expressed these concerns, which are equally implicated in the case now before this Court:

'The rule that laches on the part of such public employee will bar his claim for reinstatement is not based on any law of prescription or limitation of actions, but it arises from reasons of public policy. The processes of government must go on and employees and officials must be paid out of public revenue for carrying on the functions of government. Where a discharged employee sits idly by for an unreasonable length of time without pressing his claim for reinstatement, those charged with the duty of securing the necessary working personnel cannot hold up the administrative functions of government awaiting a decision on the part of the discharged employee as to what course he will take.'

472 So.2d at 226 (prior citation omitted). The court affirmed the summary judgment granted to the defendants, university officials, in a declaratory judgment action brought by a discharged law school professor for a declaration of his employment status, reinstatement and back pay. The declaratory judgment action was brought nearly two and one-half years after the professor's discharge.

In *Lavin v. Board of Education,* 90 N.J. 145, 447 A.2d 516 (1982), a school teacher,

---

**10.** The doctrine of laches governs the challenge to the timeliness of a public employee's claim in court for reinstatement to a public position. Such claim for reinstatement may be equated with the equitable remedy of specific performance of a contract. In contrast, it has been held that a public employee's claim for back wages ordinarily constitutes a claim for legal relief and is ordinarily governed by the statute of limitations. *Armstrong v. Baker,* 394 F.Supp. 1380, 1384–85 (N.D.W.Va.1975). We note that the court in *Armstrong* did not, however, consider the substantial prejudicial impact of a large retroactive monetary award upon the public's fiscal integrity, where there is a lengthy delay, but less than the period prescribed by the statute of limitations, in seeking such an award.

nine years after her employment commenced, filed a claim for military service credit, to be applied both retroactively and prospectively in computing her salary. While upholding the prospective relief, the Supreme Court of New Jersey ruled that the doctrine of laches barred all retroactive monetary relief. In invoking the doctrine of laches the court placed great importance on the financial integrity of public entities:

> The Board of Education did not budget for the additional expense, relying as it did on its mistaken belief that petitioner's salary had been correctly computed. This, of course, implicates the Board's financial requirements and may have serious tax consequences. The situation is compounded when such budgeting occurred over a nine-year period.
>
> Municipal financing is predicated on a pay-as-you-go principle. [citations omitted] The governing body must prepare a budget 'on a cash basis.' [statutory citation omitted] This entails a listing of proposed expenditures. By understating its expenses, the Board of Education was innocently reducing the amount of funds to be raised by taxation. This situation was aggravated because the underestimating occurred for ten years. To rectify the error would necessitate including in the current budget the full aggregate amount claimed. This could have the dual effect of causing some other service to be diminished ... and of imposing the complete tax burden on the existing taxpayer[s] for costs that should have been distributed over a ten-year period.
>
> ... Under these peculiar circumstances, wherein public entities are involved, petitioner and others situated like her should not be granted retroactive monetary relief.

90 N.J. at 153–54, 447 A.2d at 520–21. It would also be inequitable to charge the current group of public administrators with the administrative responsibility for rectifying the large, lump-sum financial burden created many years ago.

 For these reasons this Court holds that the plaintiffs' claims for retroactive monetary relief in the underlying declaratory judgment action against the county board of education are barred by laches. Such relief was sought nearly five years after the last fiscal year in question and nearly nine years after the first fiscal year in question. Delay of that duration is unreasonable, especially in light of this Court's resolution of the identical question of the liability of a county board of education for the salary supplements from special levies in *Thomas v. Board of Education*, 164 W.Va. 84, 261 S.E.2d 66 (1979), decided nearly four and one-half years before the underlying declaratory judgment action was brought.[11]

Having answered the certified questions, and based upon section IV of this opinion, we remand this case to the trial court for it to enter a final order in favor of the defendants.

Certified questions answered; case remanded with directions.

11. "In this jurisdiction it is seldom that a court of equity will declare, upon pleadings, that plaintiffs are guilty of laches." *Caplan v. Shaw*, 126 W.Va. 676, 695, 30 S.E.2d 132, 141 (1944). While we continue to adhere to this principle, the present case is one of those rare cases in which it is appropriate to declare laches based upon the pleadings.