301 S.E.2d 618

**Paul A. CLARKE**

v.

**WEST VIRGINIA BOARD OF REGENTS, et al.**

**No. 15603.**

Supreme Court of Appeals of West Virginia.

March 29, 1983.

R.F. Gallagher & Samuel Spencer Stone, Morgantown, for appellant.

Gregory W. Bailey, Deputy Atty. Gen., Charleston, for W.Va. Bd. of Regents.

PER CURIAM:

This is the second appeal by Dr. Paul A. Clarke involving his dismissal from a tenured teaching position at Fairmont State College. In his first, *Clarke v. W.Va. Board of Regents*, 166 W.Va. 702, 279 S.E.2d 169 (1981), a majority of the Court concluded that he, a tenured faculty member, could not be removed from the college payroll until the dismissal procedures consistent with the requirements of West Virginia Board of Regents Policy Bulletin No. 36 had been completed. Also, his procedural due process rights were violated by a hearing examiner's failure to state the charge or charges that had been proven

and the evidence upon which he relied to make his decision. We remanded the case to the trial court to determine the amount of back pay to which Clarke was entitled, and to require the hearing examiner to state the reasons for his dismissal recommendation and the evidence upon which he relied.

The circuit court on remand found that Clarke was entitled to pay for the period between his dismissal on May 29, 1978, and the June 7, 1978 hearing. However, because the end of the semester was May 29, he would not have received any wages and would, therefore, not actually receive any back pay. Finding ambiguity in the *Clarke* opinion, the trial court alternatively concluded that Clarke was entitled to back pay from the date of his dismissal until the college president adopted the hearing examiner's negative recommendation on March 2, 1979.

Dr. Clarke contends he is entitled to back pay from his dismissal date until the proceedings were properly completed, i.e., when the college president, following the hearing examiner's supplemental recommendation, reaffirmed his dismissal on November 11, 1981. The Board of Regents would pay him nothing.

▮▮▮ In *Clarke*, this Court concluded that a tenured college teacher has a right to remain on the payroll until dismissal proceedings are completed, and that Clarke had been dismissed and removed from the payroll in contravention of the formal personnel policies of the Board of Regents. We stated that:

According to the Bulletin, the dismissal of a faculty member does not become final until all procedures ... are exhausted or waived. Policy Bulletin, *Dismissal* § D; *Appeal* § D....

We have held in a case involving teacher transfers that "[s]chool personnel regulations and laws are to be strictly construed in favor of the employee." Syl. pt. 1, *Morgan v. Pizzino*, 163 W.Va. 454, 256 S.E.2d 592 (1979). We have also held that "[a]n administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs." Syl. pt. 1, *Powell v. Brown*, 160 W.Va. 723, 238 S.E.2d 220 (1977). The effective dismissal of a faculty member without a prior hearing as contemplated by the Board's own policies is unquestionably reversible error. *Id.,* 166 W.Va. at 719, 279 S.E.2d at 180.

Policy Bulletin No. 36, set out in part in Note 1 of *Clarke*, provides that a tenured faculty member can be dismissed only according to its procedures. It grants a tenured faculty member an appeal as of right to the Board of Regents from a decision by the school president. Thus, a tenured faculty member's dismissal becomes final only after this appellate process is waived or completed.

Given the Board's own policies, we recognized that Clarke had a substantial property interest in his position and salary, which he could not be deprived of without procedural due process protections. We found, however, that the college could suspend him from his teaching position *with* pay pending the outcome of the proceedings. We stated:

We think that the compelling interest of the college in protecting the education of its students outweighs any temporary deprivation of Dr. Clarke's liberty interest in pursuing his occupation pending the outcome of the dismissal proceeding. However, it is only in the most compelling circumstances, clearly apparent on the record, that the law may deprive one of his property before providing due process, and we cannot sanction the college's action in removing Dr. Clarke from the payroll before any final determination as to whether his dismissal was justified. Mindful of our presumption favoring pre-deprivation review, but also mindful of the compelling interest of the college in preventing harm to the students, we think that a suspension of Dr. Clarke with the pay to which tenure entitles him, pending the outcome of the dismissal proceedings, would provide the best protection for these competing interests. Dr. Clarke's property interest in his salary would be maintained and, at the same time, the college's interest in the education of its students would be

protected. *Id.*, 166 W.Va. at 720–721, 279 S.E.2d at 181 (footnote omitted).

■ Clarke is thus legally entitled to back pay until his dismissal became final by being upheld by the Board of Regents.

Dr. Clarke's case was particularly troubling because even though there were several charges brought against him, neither the hearing examiner nor anyone else stated the specific charge or charges that were found to be supported by the evidence. Because of this error, we concluded that "the appropriate remedy [was] to remand the case to the appropriate tribunal with directions to order the administrative institution to remedy the defect." *Id.*, 166 W.Va. at 716, 279 S.E.2d at 178.

We did not, however, discuss what damages were recoverable for a procedural defect, absent proof of actual damages. The United States Supreme Court in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), involving students who had been suspended from elementary and secondary schools without procedural due process, held that they could recover nominal damages not to exceed one dollar, even if their suspensions were justified, without any showing of actual damages. Justice Powell wrote for the Court:

> Even if respondents' suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process. "It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing ...." *Fuentes v. Shevin*, 407 U.S. [67] at 87, 92 S.Ct. [1983], at 1997 [32 L.Ed.2d 556]; see *Codd v. Velger*, 429 U.S. [624], at 632, 97 S.Ct. [882], at 886 [51 L.Ed.2d 92] (Stevens, J., dissenting); *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027 (1915).
>
> Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.
>
> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, see *Boddie v. Connecticut*, 401 U.S. 371, 375, 91 S.Ct. 780, 784, 28 L.Ed.2d 113 (1971); *Anti-Facist Committee v. McGrath*, 341 U.S. [123], at 171–172, 71 S.Ct. [624], at 648–649 [95 L.Ed. 817] (Frankfurter, J., concurring), we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners. *Id.* at 266–267, 98 S.Ct. at 1053–54, 55 L.Ed.2d at 266–267 (footnotes omitted).

■ *Carey* teaches that Dr. Clarke cannot depend on the procedural defects to increase his back pay award if he was not actually injured by the mistakes.

So, Dr. Clarke should be paid to the date the Board of Regents affirmed his dismissal, April 6, 1979. The circuit court calculation method would find him entitled to $14,125.24, plus one dollar nominal damages for the procedural due process violation.

Reversed and remanded with directions.