498 S.E.2d 720

**Dean B. BARAZI, Appellee,**

v.

**WEST VIRGINIA STATE COLLEGE and the Board of Directors of the State College System, Appellants.**

**No. 24125.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 1997.

Decided Dec. 5, 1997.

---

David D. Molgaard, Charleston, for Appellee.

Darrell V. McGraw, Jr., Attorney General, Samuel R. Spatafore, Assistant Attorney General, Charleston, for Appellants.

PER CURIAM: [1]

West Virginia State College ("State") appeals from a decision of the Circuit Court of Kanawha County awarding back pay to Dr. Dean B. Barazi, a former State professor, in connection with his termination. While we uphold the lower court's determination that Dr. Barazi was denied due process, we do so on grounds other than the lack of a pre-termination hearing. We reverse the lower court's decision to remand for a determination of back pay, finding that nominal damages only are to be awarded for the denial of procedural due process under the facts of this case.

Dr. Barazi was first employed by State as an associate professor in 1975. He was awarded tenure in 1981 and promoted to full professor in November 1987. During the entire period of his employment at State, Dr. Barazi was simultaneously working on a full-time basis at the E.I. DuPont Nemours' chemical plant in Belle, West Virginia. This dual employment apparently resulted in scheduling conflicts that prevented Dr. Barazi from complying with all the expected duties and responsibilities associated with his teaching position at State.

By letter dated January 4, 1993, the dean of State's community college division issued a written letter of reprimand to Dr. Barazi identifying various ongoing problems associated with his teaching position. Dr. Barazi's deficiencies were particularized in the letter as a failure to teach daytime classes or be available to students for consultation during the day; failure to retrieve campus mail in a timely fashion; failure to meet or communicate with college administrators; and failure to comply with college policy requiring submission of an annual declaration of outside employment income; annual plans; course syllabi; and a statement of office hours. The letter of reprimand closed with the statement that "[i]f these deficiencies are not remedied immediately, you are subject to notification of dismissal for insubordination and for substantial and manifest neglect of duty." Dr. Barazi responded to the reprimand document by writing dated January 28, 1993, claiming that the letter lacked specifics and was without basis or fact.

State terminated Dr. Barazi by letter dated June 11, 1993, with the following reasons given for the dismissal:

1) your failure or refusal to advise students during regularly scheduled advising periods;

2) your failure or refusal to honor office hours;

3) your failure or refusal to assist with registration activities;

4) your failure or refusal to accept divisional or college-wide committee assignments;

5) your failure or refusal to file course syllabi with the Electronics Engineering Technology program director or dean;

6) your failure or refusal to file required self-reports and other documents;

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) ("Per Curiam opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta* .... Other courts, such as many of the United States Circuit Court of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.")

7) your failure or refusal to cooperate with the EET. program director in providing data required for the upcoming ABET accreditation visit;

8) your failure or refusal to collect your mail from your mail box in B–103 for long periods of time and, therefore, failure or refusal to respond to any divisional or college request for service or information or even to meet with the dean or the EET program director; and

9) your failure or refusal to attend graduation or any other college activities, including in-service meetings at the beginning of the fall semester.

The notice of termination provided Dr. Barazi with a choice between two separate appeal mechanisms. He had the option of pursuing an appeal through the statutory procedures set forth in West Virginia Code §§ 18–29–1 to –11 (1994 & Supp.1997) or under series 36 of the State College System of West Virginia.[2] *See* 131 W.Va.C.S.R. §§ 36–1 to –16 (1992). In his answer to the termination letter, Dr. Barazi elected to appeal under series 36 of the state college system.

Following seven days of evidentiary proceedings, the hearing examiner concluded by order dated October 14, 1994, that State had terminated Dr. Barazi for cause. In explanation of his finding, the hearing examiner stated:

> This Examiner finds that it is not any one incident or act which is the basis of this opinion. The basis of this opinion is by a total review of the record collectively which shows a continual and common pattern and/or practice which constitutes neglect of duty by the Grievant. There appears to be a pervasive attitude of Dr. Barazi in his inability to co-operate with the Administration and the faculty in the performance of his duties. Dr. Barazi's actions and attitude tend to be detrimental to the College system as a whole and specifically to the students enrolled in the E.E.T. Program. Clearly, there is a prevailing priority of protecting the education of students and affording those students every opportunity to maximize the learning potential through a sound education environment.

The Board of Directors of the State College System adopted the hearing examiner's rulings in their decision issued on January 25, 1995. In addition, they denied Dr. Barazi's claim through which he sought payment of his salary during the interim between the date of his termination and the date of the Board of Directors' decision.

While the circuit court agreed with and adopted the hearing examiner's decision that State properly terminated Dr. Barazi for cause, the lower court determined that State's failure to hold a pre-termination hearing entitled Dr. Barazi to an award of back pay. State appeals from the circuit court's decision to remand for a determination of back pay, benefits, and interest.

I.

Dr. Barazi is not entitled to back pay, according to State, because he had both notice of the basis for his termination and an opportunity to respond prior to the termination and was therefore not deprived of due process. Relying upon the January 4, 1993, letter of reprimand, State maintains that Dr. Barazi was fully apprised of the problems surrounding his teaching position. State also contends that Dr. Barazi was not entitled to a pre-termination hearing under the applicable policies and regulations. If a due process violation did occur as a result of State's failure to hold a pre-termination hearing, State contends alternatively that Dr. Barazi is not entitled to back pay as he suffered no actual damages in connection with the due process deprivation.

 We held in syllabus point one of *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977), that "[t]he Due Process Clause, Article III, Section 10 of the West Virginia Constitution, requires procedural safeguards against State action which affects a liberty or property interest." It is well-settled that a tenured employee,

---

**2.** Series 36 is entitled "Academic Freedom, Professional Responsibility, Promotion, and Tenure."

such as Dr. Barazi, has both property and liberty interests in continued employment that warrant due process protections. *See Clarke v. West Virginia Bd. of Regents ("Clarke I")*, 166 W.Va. 702, 710, 279 S.E.2d 169, 175 (1981). Given our determination that due process is invoked under the facts of this case, we now examine the specific procedural due process protections that were afforded Dr. Barazi.

We recognized in *Clarke I* that due process in the civil context "is a flexible concept which requires courts to balance competing interests in determining the protections to be accorded one facing a deprivation of rights." *Id.* at 710, 279 S.E.2d at 175; *accord Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 483, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982) (commenting that "no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause"). Despite the inherent need to embrace due process issues with flexibility, certain fundamentals concerning the minimal procedural protections that must be employed are well-established. Those requirements were identified in *Clarke I* as a " 'formal written notice of charges; sufficient opportunity to prepare to rebut the charges; opportunity to have retained counsel at any hearings on the charges, to confront his accusers, and to present evidence on his own behalf; an unbiased hearing tribunal; and an adequate record of the proceedings.' " 166 W.Va. at 710, 279 S.E.2d at 175 (quoting Syl. Pt. 3, in part, *North v. West Virginia Bd. of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977)).

 While Dr. Barazi ultimately was afforded each of the procedural protections identified in *Clarke I* by means of the extensive administrative hearings, his denial of due process claim stems from his immediate removal from State's faculty simultaneous with the delivery of the termination notice. In syllabus point three of *Fraley v. Civil Service Commission*, 177 W.Va. 729, 356 S.E.2d 483 (1987), we held that "[t]he constitutional guarantee of procedural due process requires ' "some kind of hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his

employment.' *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 [105 S.Ct. 1487, 1493, 84 L.Ed.2d 494] (1985)." In defense of its failure to afford Dr. Barazi a pre-termination hearing, State argues first that applicable state regulations do not require such a hearing and second, that limited procedural due process can be employed initially provided that "there are prompt post-deprivation hearing procedures giving a fuller measure of due process to the aggrieved party." *North*, 160 W.Va. at 254, 233 S.E.2d at 416.

The fact that the regulations set forth in series 36 do not mandate that a pre-termination hearing be held is not determinative of State's obligations to utilize procedures that comport with constitutional standards of due process. In other words, exclusion of step-by-step regulatory procedures identifying in detail every component of procedural due process does not negate State's obligation to conduct its termination of tenured employees in a manner that complies with constitutionally-developed standards of due process. The pertinent provisions within series 36 dealing with termination of tenured individuals provide that:

> 12.2 Notice of dismissal for cause: The president of the institution *shall institute proceedings* by giving the faculty member a written dismissal notice by registered or certified mail, return receipt requested, which dismissal notice shall contain:
>
> 12.2.1 Full and complete statements of the charge or charges relied upon;
>
> 12.2.2 A description of the appeal process available to the faculty member . . . ; and
>
> 12.2.3 A statement that the faculty member has the right to elect to have the hearing conducted either by an institutional hearing committee or a hearing examiner of the board.

131 W.Va.C.S.R. § 36–12.2 (emphasis supplied). Only if the tenured employee fails to file an answer to the notice of dismissal is the termination process considered to be final

following the issuance of such notice. *Id.* at § 36–12.3.[3]

■ While a pre-termination hearing may not be required in every case,[4] the absence of a pre-termination hearing in this case is not determinative of the issue of due process denial. This is because State failed to afford Dr. Barazi any opportunity to respond to the notice of termination before it effected his termination and ceased paying his salary. Even State admits that a critical element necessary to meet minimal standards of due process is an opportunity to respond. In an attempt to circumvent its failure to permit Dr. Barazi an opportunity to respond, State suggests that we view the January 1993 letter of reprimand as the document which identified the basis for his termination. Because that letter clearly was written in terms of possible further action being taken, it cannot be viewed as the notice-affording instrument of termination.[5] Yet another reason why the January 1993 letter of reprimand cannot constitute notice of termination is because applicable state regulations required that the termination process be instituted by the college president.[6] *See* 131 C.S.R. § 36–12.2. Upon a full review of the facts of this case, it is clear that State technically failed to comply with longstanding due process tenets requiring that before an individual is deprived of a constitutionally-protected interest, he must first be permitted an opportunity to respond to the charges against him.

■ State's secondary position that initial due process can be minimal provided that adequate procedures are ultimately and promptly employed is equally unpersuasive. State's contention here is essentially that because procedures that met due process requirements were employed once the matter proceeded to administrative hearing, we should disregard the fact that State's initial handling of the termination failed to comport with recognized due process standards. Admittedly, this Court has recognized that the exigencies of the situation or the reduced value or temporary nature of the interest or deprivation involved may affect the applicable due process safeguards that must be employed. *See North,* 160 W.Va. at 258, 233 S.E.2d at 417 (noting that danger to persons or property and disruption of academic process have been recognized by the United States Supreme Court in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) as situations where prior notice and hearing are not required). At the same time, however, we have held that " '[d]ue process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise.' Syl. pt. 2 (in part), *North v. West Virginia Board of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977)." Syl. Pt. 5, *Clarke I.,* 166 W.Va. at 703, 279 S.E.2d at 171. Because this case involves both the presence of a substantial property interest, through the tenured position of employment, and the lack of any compelling policy or need that might have justified the use of diminished due process procedures, State fails in its attempt to coattail onto the constitutionally-sufficient procedural due process afforded Dr. Barazi when the case proceeded to administrative hearing.

## II.

■ Having determined that State failed to provide procedural due process in

---

**3.** This provision states that "[i]f the faculty member fails to file a timely answer, the notice of dismissal shall be final." 131 W.Va.C.S.R. § 36–12.3.

**4.** Had State not ceased paying Dr. Barazi's salary simultaneous with the delivery of the June 11, 1993, letter of termination, this case might well have proceeded through the administrative appeals process without the accompanying claim of due process denial. State's actions with regard to immediately effecting the termination, as well as the cessation of salary and benefits, without permitting Dr. Barazi to reply to the letter are certainly the genesis of the due process complaint.

**5.** Because Dr. Barazi was given an opportunity to respond, and in fact did respond to the letter of reprimand, State would be in a better position if that document was the operative notice of termination for due process purposes.

**6.** Whereas the June 11, 1993, letter of termination was issued by Hazo W. Carter, Jr., as President of State, the January 4, 1993, letter of reprimand was authored by George Bilicic, as Dean of State's Community College Division. Effective July 30, 1997, series 36 amendments now permit the college president or a "designee" to institute the dismissal process. 131 W.Va. C.S.R. § 36–12.2 (1997).

failing to permit Dr. Barazi an opportunity to respond before effecting the termination, we next examine the circuit court's decision to award back pay as a remedy for the due process deprivation. The court in *DeSimone v. Board of Education*, 612 F.Supp. 1568 (E.D.N.Y.1985) succinctly stated the law regarding when compensatory damages are available for due process violations:

> When official policy results in a person being deprived of property or liberty without procedural due process, and such deprivation would have taken place even if a proper hearing had been held, then the person is not entitled to compensatory damages for the deprivation itself. *Carey v. Piphus*, 435 U.S. 247, 260, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). The person is entitled only to nominal damages for the denial of due process, unless the person demonstrates actual injury attributable to the *denial of due process* rather than to the *deprivation.*

612 F.Supp. at 1571 (some citations omitted). In those cases, such as the present one, where due process violations occurred and yet the action taken is found to be proper, a nominal damage award is proper:

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.

*Clarke v. West Virginia Bd. of Regents* (*Clarke II* ), 171 W.Va. 662, 664, 301 S.E.2d 618, 621 (quoting *Carey*, 435 U.S. at 266–67, 98 S.Ct. at 1053–54 and citations omitted).

■ As support for the circuit court's decision to award him back pay, Dr. Barazi relies on this Court's decisions in *Clarke I* and *Clarke II*. While that case similarly involved a tenured college professor who was terminated without a pre-termination hearing, additional due process violations were present in that case that were determined to be curable. Those procedural defects were inadequate notice of the basis for the termination and ineffectual review due to the hearing examiner's failure to identify the basis for his findings and recommendations. The award of back pay in *Clarke I* was inextricably connected to the holding stated in syllabus four of that decision: "The proper remedy for reversible due process procedural defects in administrative proceedings is to remand the case to the appropriate tribunal with directions to order the administrative institution to remedy the defect." Syl. Pt. 4, 166 W.Va. at 702–03, 279 S.E.2d at 171. As support for its decision to award back pay in *Clarke I*, the court cited *Soni v. Board of Trustees*, 376 F.Supp. 289 (E.D.Tenn.1974), *aff'd*, 513 F.2d 347 (6th Cir.1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976), a case in which back pay was ordered to be paid from the date of termination "until the University completes a hearing complying with … [due process]." 376 F.Supp. at 293.

The presence in *Clarke I* of reversible due process procedural defects is a critical distinction between the *Clarke* cases and the instant case. The award of back pay was expressly tied to the curable due process defects and the need to remand to remedy those defects.[7] 166 W.Va. at 722, 279 S.E.2d at 181. Accordingly, the absence of any curable procedural due process defects that warrant a remand in this case eradicates the rationale relied upon by this Court in *Clarke I* in awarding back pay in that case.[8]

---

**7.** The remand in *Clarke I* was ordered "to require the hearing examiner to state the reasons for the dismissal recommendation and the evidence upon which he relied." 171 W.Va. at 663, 301 S.E.2d at 619.

**8.** Although *Clarke I* clearly suggested that the award of back pay on remand was to be for the period of time between the dismissal and the proceedings necessary to comply with due process, the trial court found itself in a bind when it determined that the operative period for an award of back pay was a post-semester period for which he would not ordinarily receive pay. 171 W.Va. at 663, 301 S.E.2d at 619. Rather

Based on the foregoing, the decision of the Circuit Court of Kanawha County is hereby reversed with regard to damages, and like the United States Supreme Court in *Carey*, we direct that $1.00 in nominal damages is to be awarded in connection with the denial of procedural due process consistent with this Court's recognition in *Clarke II* of *Carey's* holding that the denial of procedural due process is actionable for nominal damages.[9] *See* 171 W.Va. at 664, 301 S.E.2d at 621

(quoting *Carey*, 435 U.S. at 266–67, 98 S.Ct. at 1053–54).

Affirmed, in part, and reversed, in part.

---

than make a finding of no back pay, however, the circuit court decided to extend the applicable period of time for which back pay was proper up until the date on which the college president adopted or rejected the hearing examiner's recommendation. While this Court adopted the circuit court's actions in that regard in *Clarke II*, a close reading of *Clarke I* certainly calls into question whether the extension of the applicable back pay period was proper.

**9.** Our holding in this case in no way suggests that employers have a license to deprive individuals of due process with the expectation that they will only have to pay nominal damages for such violations. In those instances where due process clearly applies, the individual whose rights have been deprived may have a right to seek extraordinary relief before this Court to enforce his/her constitutional right to due process.