## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Stephen C. Sluss,**
**Petitioner Below, Petitioner**

**vs)  No. 18-0626** (Kanawha County 03-MISC-315)

**The Honorable John B. McCuskey, Auditor of the**
**State of West Virginia,**
**Respondent Below, Respondent**

**FILED**

**November 13, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner Stephen C. Sluss (hereinafter "petitioner")[1] appeals the June 13, 2018, order of the Circuit Court of Kanawha County refusing his petition for a writ of mandamus against respondent The Honorable John B. McCuskey, Auditor of the State of West Virginia (hereinafter "the Auditor")[2] requiring the Auditor to pay petitioner sums allegedly due for his work as a Deputy Land Commissioner from 1997-2000.  Petitioner claims that the then-Auditor, Glen B. Gainer, III, improperly paid him on an hourly basis for land commissioner work in contravention of West Virginia Code § 11A-3-66 (1995) which provides for Deputy Land Commissioners to be paid a percentage of land sales or redemptions.  The circuit court dismissed the writ—which had been pending on its docket for fifteen years—on the basis of the statute of limitations and petitioner's failure to establish a "clear legal right" to recovery.

This Court has considered the parties' briefs, oral arguments, and the record on appeal.  Upon consideration of the standard of review and the applicable law, we find no substantial question of law presented, nor prejudicial error.  For these reasons and those set forth herein, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1] Petitioner is represented by Barbara Harmon-Schamberger, Esq.

[2] Respondent is represented by Lisa A. Hopkins, Esq., Vincent J. Smith, Esq., and Michael Nusbaum, Esq., of the West Virginia State Auditor's Office.

At the time of the initial filing of this matter, Glen B. Gainer, III served as State Auditor; he resigned effective May 14, 2016.  The Honorable John B. McCuskey, who took office on January 16, 2017, has been substituted as the appropriate party pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

1

# I. Factual and Procedural History

On May 15, 1994, petitioner was hired as a temporary employee of the State Auditor's office at a rate of $45.00/hour; the next day the Auditor[3] signed a letter appointing him Deputy Land Commissioner for Logan County. His appointment letter stated that "the compensation normally received by the Deputy Commissioner will be deposited into the special operating fund for the Land Division of the State Auditor's Office." Thereafter and until June, 2001, petitioner periodically performed tax deed sales in Logan and various other counties, as evidenced by tax sale documentation and hourly invoices contained in the record.[4] In December 1997, petitioner and the Auditor signed a one-year contract, hiring petitioner for "deputy land commissioner work" and setting petitioner's fees at $50.00/hour. Petitioner signed another such contract for the time period of May 1, 2001 through April 31, 2002. Petitioner maintains he was left with no choice but to accept these "new" contractual arrangements because he had children in college to support. It appears petitioner ceased performing this work in June, 2001.

In 2001, the Legislative Auditor conducted an audit of the State Auditor's office for the period of July 1, 1998 through June 30, 2000. As part of its findings, the audit concluded that "[t]he Auditor's Office is collecting fees and commissions not specifically authorized by the West Virginia Code." In particular, the audit found that the State Auditor was improperly retaining fees for "services performed by an attorney [petitioner] licensed to practice in West Virginia, and appointed by the State Auditor as a 'Special Deputy' to carry out the duties of a deputy land commissioner." Citing West Virginia Code § 11A-3-66's[5] requirement that deputy land

---

[3] *See* n. 2, *supra*. Glen B. Gainer, III served as the State Auditor at all times relevant to this appeal.

[4] Petitioner appeared to perform work in Mason, Upshur, Jefferson, Wetzel, and Randolph counties from 1999-2001. Petitioner likewise submitted expenses during the 1995-1996 time frame for services performed in Mingo, McDowell, Gilmer, Roane, Harrison, Lewis, and Randolph counties. There are no appointment letters for any of these counties in the appendix record.

With respect to his compensation, it appears that petitioner only submitted expense vouchers for 1995-1996; in 1997-1998, he submitted hourly fee invoices. In spite of the disclaimer in the Logan County appointment letter, petitioner indicates he was paid the percentage commission set forth in West Virginia Code § 11A-3-66 until the Auditor changed the fee arrangement with the 1997 vendor contract, although there is no evidence supporting this contention in the appendix.

[5] West Virginia Code § 11A-3-66 provides:

> As compensation for his services, the deputy commissioner shall be entitled to a fee of ten dollars for each item certified to him by the auditor pursuant to section forty-four of this article. In addition thereto he shall receive a commission of fifteen percent on each sale

commissioners be compensated with a flat fee and commission on sales or redemptions, the audit found that $149,761.39 in fees and commissions were generated by the special deputy's sales, but that, "the Auditor's Office chose to compensate the special deputy, a contract employee, at a flat rate of $50.00 per hour . . . ."

By way of explanation for this aberration, the Senior Deputy State Auditor apparently explained that the Auditor could not find qualified persons to be appointed Deputy Commissioners for the smaller counties because the sales were not profitable. Therefore, the Auditor's office hired petitioner on an hourly contract basis, which effected a cost savings for the State. In written response to the audit findings, the Auditor disagreed with the finding of noncompliance, arguing that 1) West Virginia Code § 11A-3-34 was amended to allow for an employee to conduct sales[6]; 2) as employees, such individual should not receive both a salary or contract wages *and* the statutory commission; and 3) petitioner had done minimal work in regard to the sales, the bulk having been completed by the Auditor's office, thereby making him not entitled to the commission as prescribed by statute.

On July 10, 2003, petitioner filed a claim with the Court of Claims to recover the approximate $149,000 referenced by the Legislative Auditor.[7] Thirteen days later on July 23, 2003, petitioner filed the instant petition for writ of mandamus seeking the same relief in the

---

> or redemption. Such commission on sales shall be based on sale price and on redemptions on the total taxes and interest due. Such compensation shall be paid as provided in this article.

[6] The appointment statute, at all pertinent times herein, permitted the use of State Auditor employees in this role, under varying circumstances; therefore, this justification appears immaterial. A 2001 amendment changed the statute's wording slightly to remove the requirement that State Auditor employee-appointees serving as Deputy Land Commissioners be licensed attorneys. We note further that in 2002, the appointment statute was changed far more significantly, seemingly to address the issue presented by the legislative audit, i.e. whether employee-appointees are entitled to the statutory commission. The statute now reads, in part:

> When a deputy commissioner is an employee of the auditor, all compensation and commissions that would otherwise be paid to a deputy commissioner shall be credited by the sheriff to the auditor for deposit into the operating fund created pursuant to section thirty-six of this article.

W. Va. Code § 11A-3-34 (effective 90 days after March 9, 2002). There appears to be no dispute that the 2001 and 2002 versions of the statute were not in effect as of the time of the work rendered by petitioner since his last work performed was in June, 2001.

[7] Significantly, petitioner indicates in his Notice of Appeal that he "believes that this matter is still pending in the Court of Claims but has not fully ascertained whether that is so."

3

Circuit Court of Kanawha County. Petitioner alleged that the hourly compensation paid by the Auditor rather than the statutory commission was an *ultra vires* act. The case thereafter languished with only sporadic activity[8] for the next fifteen years.

On June 13, 2018, the circuit court *sua sponte* entered a final order dismissing the petition.[9] First, the circuit court found that petitioner last worked for the Auditor in June, 2001, but did not file his petition until greater than two years later on July 23, 2003. As a result, the circuit court found that petitioner had failed to timely file his petition within a two-year statute of limitations. Secondly, the circuit court found, apparently accepting the Auditor's factual representations as true, that petitioner was paid hourly for his work and that the majority of the land sale work was performed by the Auditor's office. The court further found, without specific citation, that "West Virginia Code" allows for appointment of an employee as special deputy to perform land sales and that such special deputy was "not required to be compensated in the same manner as a deputy land commissioner[.]" Finally, the court found that petitioner acquiesced to being paid hourly for seven years and, since he "knowingly performed limited services," cannot now "seek additional compensation for work that was performed [] by the land division employees." The court therefore found that petitioner had failed to establish a "clear legal right" to the relief requested and denied his petition for writ of mandamus. This appeal followed.

## II. Standard of Review

This Court has held that "[a] *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus." Syl. Pt. 1, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008). Moreover, "a writ of mandamus will not issue unless three elements coexist-(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W. Va. 538, 170 S.E.2d 367 (1969). With these standards in mind, we address the parties' arguments.

## III. Discussion

Petitioner makes four assignments of error, asserting that the circuit court erred by: 1) applying a statute of limitations rather than laches to bar the action; 2) failing to properly apply

---

[8] It appears there was dispute about proper service of process which was either resolved or withdrawn. There was later an issue regarding the timing of the Auditor's response to the petition, giving rise to a motion for default, which appears to likewise have been resolved or withdrawn. The docket sheet provides little to no information with regard to what occurred with the various hearings that were scheduled. The parties' briefs likewise provide little information on what occurred throughout the pendency of this case.

[9] The parties had provided briefs on certain legal issues nearly five years prior to the entry of the order with no interim activity other than a motion to withdraw by one of petitioner's attorneys.

4

tolling to the statute of limitations; 3) misapplying an amended statute; and 4) misconstruing the operative statute. We find that the first two assignments and last two assignments are effectively redundant and address them collectively.[10] *See Tudor's Biscuit World of Am. v. Critchley*, 229 W.

---

[10] In his brief, petitioner also makes a due process argument based on the circuit court's delay and failure to conduct an evidentiary hearing. However, this issue is not designated as an assignment of error in petitioner's brief. Rule 10(c)(3) of the Rules of Appellate Procedure provides that a brief must

> open[] with a list of the assignments of error that are presented for review, expressed in terms and circumstances of the case but without unnecessary detail. The assignments of error need not be identical to those contained in the notice of appeal. The statement of the assignments of error will be deemed to include every subsidiary question fairly comprised therein. If the issue was not presented to the lower tribunal, the assignment of error must be phrased in such a fashion as to alert the Court to the fact that plain error is asserted. In its discretion, the Court may consider a plain error not among the assignments of error but evident from the record and otherwise within its jurisdiction to decide.

While the due process issue was mentioned in the initial assignments of error included in petitioner's Notice of Appeal, these designations are not binding on the parties per Rule 10(c)(3). More importantly, the notice of appeal does not supplant the need to identify the assignments of error in a party's brief. Regardless, however, we find no due process violation.

Petitioner argues that he was denied due process because the circuit court failed to conduct an evidentiary hearing. The Auditor counters that the circuit court provided "ample opportunities for Petitioner to be heard and the Petitioner failed to pursue his claim and make his case." The Auditor notes that "there were hearings" and that the parties filed briefs. Critically, petitioner cites to nothing which would necessarily entitle him to an evidentiary hearing in a mandamus proceeding. As pertains to civil procedural due process, the Court has acknowledged that

> due process in the civil context "is a flexible concept which requires courts to balance competing interests in determining the protections to be accorded one facing a deprivation of rights." *Id.* at 710, 279 S.E.2d at 175; *accord Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 483, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982) (commenting that "no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause").

*Barazi v. W. Va. State Coll.*, 201 W. Va. 527, 531, 498 S.E.2d 720, 724 (1997). Therefore, due process in this context does not require use of a particular procedure, absent some directive from this Court. More to the point, in view of our determination that petitioner has failed to demonstrate a clear legal right, an evidentiary hearing would do nothing to remedy that fatal defect.

Va. 396, 401-02, 729 S.E.2d 231, 236-37 (2012) (combining related and/or redundant assignments of error).

### A.    Application of Statute of Limitations and/or Laches in Mandamus Actions

Petitioner first argues that the circuit court erred by applying a statute of limitations to his petition for writ of mandamus, asserting that mandamus actions are *only* barred by laches. The circuit court found that petitioner's action was barred by the statute of limitations, citing a two-year statute of limitations, presumably the one contained in West Virginia Code § 55-2-12 (1959) applicable to personal injury and property damage actions. The circuit court found that since petitioner last worked in June, 2001, his filing of the action in July, 2003 was beyond the two-year statute of limitations. The Auditor counters that the circuit court did not err, citing *dicta* from our caselaw stating that the statute of limitations does in fact apply to mandamus.

As to the applicability of laches to mandamus, petitioner is correct. This Court has plainly held that "[t]he extraordinary remedy of mandamus, though on the law side of the Court, is limited as to time by the equitable doctrine of laches." Syl. Pt. 1, *State ex rel. Kay v. Steinmetz*, 144 W. Va. 802, 111 S.E.2d 27 (1959). However, the applicability of laches does not necessarily foreclose the equal application of the statute of limitations. Clearly both laches and statutes of limitations may co-exist: "The doctrine of laches may apply in equity, *whether or not a statute of limitation also applies* and whether or not an applicable statute of limitation has been satisfied." 30A C.J.S. Equity § 176 (emphasis added). The Court's prior holding regarding the applicability of laches does not—either expressly or by implication—foreclose the equal applicability of the statute of limitations. *See Maynard v. Bd. Of Educ. Of the Cty. Of Wayne*, 178 W. Va. 53, 357 S.E.2d 246 (1987) (finding declaratory judgment action filed within statute of limitations but barred by laches).

In that regard, the Auditor cites to *State ex rel. Ashworth v. State Road Commission*, 147 W. Va. 430, 436, 128 S.E.2d 471, 476 (1962) in support of its contention that the circuit court did not err in applying a statute of limitations: "This Court has held, however, that the statute of limitations, as set forth in Code, 55-2-12, as amended, may act as a bar to any claim sought as a result of a proceeding in mandamus." (citing *State ex rel. Dunn v. Griffith*, 139 W. Va. 894, 82 S.E.2d 300 (1954)). In *Ashworth*, the Court found a statute of limitations applicable to an original action in mandamus, but found the action timely filed. In *Dunn*, the Court applied the statute of limitation to bar the mandamus action. More recently, the Court has found *both* the contractual statute of limitations set forth in West Virginia Code § 55-2-6 (1923) and the concept of laches applicable to a mandamus action brought to require the Consolidated Public Retirement Board to increase the petitioner's retirement benefits. *See Adams v. Ireland*, 207 W. Va. 1, 528 S.E.2d 197 (1999). Moreover, from a purely statutory construction standpoint, the language of our contractual and personal action statutes of limitations—West Virginia Code §§ 55-2-6 and 55-2-12—appear to make themselves applicable to mandamus by virtue of their language, stating they apply to "*every* action," and "*[e]very* personal action" respectively. (Emphasis added).

Therefore, while we find no error in the court's general application of a statute of limitation to the petition for mandamus relief, we find that the court plainly erred in applying a

two-year statute of limitations. Notably, petitioner fails to assign this as error.[11] Nevertheless, we are compelled to address this issue in view of its relationship to petitioner's assigned errors. *See Cartwright v. McComas*, 223 W. Va. 161, 164, 672 S.E.2d 297, 300 (2008) (recognizing plain error in civil matters).

The two-year statute of limitations set forth in West Virginia Code § 55-2-12, which the circuit court ostensibly applied without citation or analysis, states:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, *if it be for damage to property*; (b) within two years next after the right to bring the same shall have accrued *if it be for damages for personal injuries*; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

(emphasis added). Clearly, this action is neither for property damage nor personal injury. Rather, similar actions have been found to sound in contract and therefore governed by West Virginia Code § 55-2-6.[12] *See Adams,* 207 W. Va. 1, 528 S.E.2d 197 (holding that action to recover statutorily-mandated pension rights are contractual and that one-year "catch-all" statute of limitation was inapplicable); *Maynard,* 178 W. Va. at 58, 357 S.E.2d at 252 ("Compensation of an employee is an integral part of every employment contract. Therefore, statutory provisions on employee compensation . . . are integral elements of a contract of employment."); *Jones v. Tri-Cty. Growers, Inc.*, 179 W. Va. 218, 221, 366 S.E.2d 726, 729 (1988) (applying five-year contract statute of limitations where "there is no ambiguity in the terms of the contract itself. Rather, the issue is whether application of the provisions of the contract are contrary to [statute]").

---

[11] Instead, petitioner focuses on the circuit court's calculation of the statute of limitations by failing to allow for the thirty-day tolling provision applicable upon providing notice of a suit against the State pursuant to West Virginia Code § 55-17-3(a)(2). However, given the circuit court's much more fundamental error in applying a two-year statute of limitations, rather than the applicable five- or ten-year contractual statute of limitation, this argument is immaterial.

[12] West Virginia Code § 55-2-6 provides:

> Every action to recover money, which is founded upon an award, or on any contract . . . shall be brought within the following number of years . . . if it be upon any [] contract in writing under seal, within ten years; if it be upon an award, or upon a contract in writing, signed by the party to be charged thereby, or by his agent, but not under seal, within ten years; and if it be upon any other contract, express or implied, within five years . . . .

7

Accordingly, while we find no error in the circuit court's application of a statute of limitations to mandamus, we find that the circuit court erroneously applied a two-year statute of limitations to petitioner's action. However, in view of our ultimate conclusion that petitioner's allegations fail to establish a "clear legal right" of relief, we decline to reverse on this basis.

**B.      *Existence of a "Clear Legal Right" to Mandamus Relief***

Petitioner's final two assignments of error assert that the circuit court erred in its application and construction of the statutes regarding appointments and commissions payable to deputy land commissioners —West Virginia Code §§ 11A-3-34 and -66. In particular, the circuit court's order states:

> The Court agrees with the State Auditor's argument that West Virginia Code allows for the appointment of an employee to conduct land sales; that the employee, serving as a special deputy, was not required to be compensated in the same manner as a deputy land commissioner; and in the event of an employee being appointed a special deputy, any fee due to a deputy land commissioner should go to the State because it was actually the State providing the service. Petitioner was compensated for seven (7) years at an hourly rate based on time sheets that he submitted. The Petitioner knowingly performed limited services and he cannot now seek additional compensation for work that was performed was performed [sic] by the land division employees.

Therefore, the circuit court found that petitioner had not established a clear legal right to relief in mandamus. Petitioner argues this conclusion was error inasmuch as West Virginia Code § 11A-3-66, setting forth the compensation scheme for deputy commissioners, makes no provision for alternate fee arrangements.

While we agree that the circuit court's analysis of the applicable statutory language and factual predicate was cursory at best, our *de novo* review of this matter leads us to the same conclusion:  that petitioner failed to establish a clear legal right to receipt of a percentage commission on the land sale work performed by petitioner. Petitioner claims that, irrespective of the implied and written contracts for hourly compensation, he was *also* entitled to recover the statutory commission. The parties disagree about whether petitioner ever received any such commission and the terms of his appointments in the various counties in which he performed land commissioner work; the appendix record fails to elucidate those issues in any degree. Both parties concede that a large portion of administrative matters accompanying the land sales were actually handled by the Auditor's staff, and not petitioner. Petitioner nonetheless asserts that he was not required to "earn" the commission through the discharge of specific duties. Conversely, the

auditor asserts that payment of any such commission over and above the hourly wages petitioner was paid would be statutorily and constitutionally barred as "extra" compensation.[13]

Moreover, the circuit court's order, superficial though it may be, identifies additional critical disputed legal issues upon which petitioner's entitlement to the statutory commission may rest: the applicability of the contractual defenses of estoppel and/or waiver resulting from petitioner's acquiescence to being paid hourly. *See Williams v. Tucker*, 239 W. Va. 395, 400, 801 S.E.2d 273, 278 (2017) ("Our law is clear that waiver is a general contract defense that may be applied to invalidate a contract."); *but see State ex rel. Town of S. Charleston v. Partlow*, 133 W. Va. 139, 170, 55 S.E.2d 401, 416 (1949) (Haymond, J. concurring) ("'An unauthorized or illegal contract executed by a public corporation is incapable of enforcement. It is absolutely void, and neither the doctrine of estoppel nor ratification can be invoked to maintain it.'" (quoting *Herald v. Bd. of Educ.*, 65 W.Va. 765, 65 S.E. 102, 105 (1909)). Like most defenses, estoppel and waiver are factually-driven inquiries. *See* Syl. Pt. 2, in part, *Ara v. Erie Ins. Co.*, 182 W. Va. 266, 387 S.E.2d 320 (1989) ("To effect a waiver, there must be evidence which demonstrates that a party has intentionally relinquished a known right.").

The confluence of these core factual and legal disputes demonstrates the unavailability of mandamus in this case. As this Court has held, "[p]etitioners in mandamus must have a clear legal right to the relief sought therein and *such right cannot be established in the proceeding itself*." Syl. Pt. 1, *Kucera*, 153 W. Va. 538, 170 S.E.2d 367 (emphasis added). Moreover, the Court long ago made clear that

> [w]hile a writ of mandamus is the proper remedy to compel the tribunals and officers exercising discretion and judicial power *to act*, when they fail so to do, in violation of their duty, mandamus is *never* employed to prescribe *in what manner each tribunals and officers shall act*, or *to correct errors they may have made.*

Syl. Pt. 3, *Meador v. Cty. Ct. of McDowell Cty.*, 141 W. Va. 96, 87 S.E.2d 725 (1955) (emphasis added). Petitioner herein seeks more than a writ to compel the Auditor to act—he seeks a legal determination of the proper measure of compensation to which he was entitled and a correction of what he contends was the Auditor's error in rendering unauthorized compensation. Because "[m]andamus was never intended to determine a right, but only to enforce a right," petitioner has failed to demonstrate a clear legal right entitling him to relief in mandamus. Syl. Pt. 3, in part, *State ex rel. Booth v. Bd. of Ballot Comm'rs of Mingo Cty.*, 156 W. Va. 657, 196 S.E.2d 299 (1972).[14]

---

[13] *See* W. Va. Const. art. VI, § 38 and W. Va. Code § 6-7-7 (barring "extra compensation" after services have been rendered).

[14] Other than a brief reference in petitioner's notice of appeal, neither party discusses the claim petitioner filed with the Court of Claims (now known as the "Legislative Claims Commission"). Petitioner's counsel indicated in oral argument that "nothing" had occurred with the claim, consistent with her equivocal statement in the notice that she "believes" that the matter

9

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**:  November 13, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

is "still pending" there.  We find this dual proceeding particularly pertinent inasmuch as the final requirement for issuance of a writ of mandamus is "the absence of another adequate remedy."  Syl. Pt. 2, in part, *Kucera,* 153 W. Va. 538, 170 S.E.2d 367.  *See also* Syl. Pt. 2, *Stowers v. Blackburn*, 141 W. Va. 328, 90 S.E.2d 277 (1955) (permitting denial of mandamus where there is another remedy which is "equally beneficial, convenient and effective").

10